JOURNAL ENTRY AND OPINION
{¶ 1} Plaintiff-appellant, State of Ohio, appeals the judgment of the Cuyahoga County Common Pleas Court that granted the motion to dismiss filed by defendant-appellee, Darryl Smith. For the reasons that follow, we affirm.
 {¶ 2} The record reveals that Cleveland Metropolitan Housing Authority ("CMHA") police arrested defendant-appellee, Darryl Smith ("Smith"), on September 9, 2001 at a CMHA apartment Smith shared with his fiancé, Juanita McClain, for allegedly assaulting Ms. McClain on this date. Smith reportedly spent a few nights in jail, was released without posting bond and without having any charges filed against him. On October 23, 2001, the Cuyahoga County Grand Jury charged Smith with two counts of domestic violence and sent notice by certified mail of these charges, and the date set for arraignment, to the CMHA residence. Although the notice listed the correct street address, it did not contain the apartment number and the notice was eventually returned to the court as "unclaimed." When Smith did not appear at the arraignment hearing set for November 6, 2001, the court issued a capias for Smith. On April 17, 2003, approximately 18 months later, Smith was arrested on the outstanding charges.
 {¶ 3} Smith moved to dismiss the charges against him on speedy trial grounds. At the subsequent hearing on the motion, Smith testified that he received no notice of the charges against him nor did he receive any notice that certified mail was being held for him at the post office. Ms. McClain testified similarly and further testified that she and Smith moved from the CMHA residence sometime in October 2001 and then again in January 2002 to their present address. She testified, however, that she completed paperwork at the post office regarding their changes of address and made arrangements to have their mail forwarded to their current address. Indeed, Smith presented evidence demonstrating that other mail had been forwarded from the CMHA residence to their current address. Moreover, Smith testified that the utilities for both residences have always been in his name and that he continued to receive correspondence from those entities during the residence changes. He also testified and presented documentary evidence that he had a claim for unemployment benefits with the Ohio Department of Job and Family Services pending in October 2001, correspondence of which he properly received at the CMHA residence, as well as a pending workers' compensation claim with The Industrial Commission of Ohio. It is Smith's position that he was unaware that any charges were filed against him as a result of the September 9, 2001 arrest and that he did nothing to evade notice of any such charges. Indeed, he contends that his whereabouts were easily ascertainable because of his involvement with agencies affiliated with the county and the state. Any failure to act on the part of the state in notifying him of these charges, he argues, is presumptively prejudicial and should not inure to the state's benefit.
 {¶ 4} Acknowledging that the four-part test set forth in Barker v.Wingo (1972), 407 U.S. 514, 92, S.Ct. 2182, 33 L.Ed.2d 101, controls, the parties, nonetheless, disagree on whether Smith suffered any prejudice as a result of the 18-month delay. The state argued then, as it does now, that Smith suffered no prejudice. Smith, on the other hand, contends that prejudice is presumed when there is a delay of more than one year, as there is in this case.
 {¶ 5} Finding the delay prejudicial, the trial court stated:
 {¶ 6} "I guess where I come down on this, therefore, is that the prejudice to [Smith] is substantial here because of the personal impact that it has had on his life. And there is nothing here that shows that [Smith] did anything to evade being found. And there is no evidence before the Court as to what is the most reasonable way and efficient way for the Sheriff's Department to operate here, and I think that [absent] a showing, therefore, that this was the best that can be expected in a situation like this, and particularly I think at the early stage here when they don't — when they don't identify him, and where they haven't got the right address, they don't have an incorrect address, but they don't have as accurate an address that they could have on him. So there is a failure here on the part of the justice system to get this to him, and I think in light of that, the way I'd balance it out, I think the prejudice that [Smith] experiences here outweighs any prejudice in the interest of the justice system they have in prosecuting him in this case, and therefore, I think that his constitutional rights have been violated, so I'm going to grant the motion to dismiss."
 {¶ 7} The state is now before this court and asserts in its single assignment of error that the trial court erred in dismissing the case against Smith.
 {¶ 8} In Barker v. Wingo, 407 U.S. 514, 92 S.Ct. 2182,33 L.Ed.2d 101, the court set forth a four-part test to determine whether the state has violated an accused's constitutional right to a speedy trial. This test includes considering (1) the length of the delay; (2) the reason for the delay; (3) the defendant's assertion of his or her right to a speedy trial; and (4) the prejudice to the defendant. Id. at 530-532; see, also, State v. Triplett (1997), 78 Ohio St.3d 566;State v. Selvage
(1997), 80 Ohio St.3d 465, 467.
Length of Delay
 {¶ 9} The length of delay is the "triggering mechanism" that determines the necessity of inquiry into the other factors. Id. at 530. One year is generally considered sufficient to trigger a Barker inquiry.Doggett v. United States (1992), 505 U.S. 647, 652, 112 S.Ct. 2686,2691, 120 L.Ed.2d 520, 528, fn. 1. Until there is some delay that is presumptively prejudicial, "there is no necessity for inquiry into the other factors that go into the balance." Barker, 407 U.S. at 530.
 {¶ 10} In this case, the parties do not dispute that the 18-month delay between indictment and arrest triggers the presumption of prejudice. We must then consider the other factors in the Barker test.
Defendant's Assertion of the Right to Speedy Trial
 {¶ 11} Reiterating, the record reflects that Smith was released from jail in September 2001 without posting bond and without having any charges filed against him. According to his testimony, he was unaware that any charges were filed against him after his initial arrest. It was not until he was arrested in April 2002 that he became aware of the indictment charging him with domestic violence. Shortly thereafter, he filed the within motion to dismiss, asserting his constitutional right to speedy trial.
Reason for the Delay and Prejudice to the Defendant
 {¶ 12} The record does not reflect and the state offers no evidence indicating that any further action was taken to locate Smith after the certified mail envelope containing the summons was returned to the clerk as "unclaimed." Indeed, Smith was arrested at the very residence to which the summons should have been mailed. The information sheet provided to the prosecutor's office likewise contained the correct address, including the apartment number. Moreover, the record does not reflect and the state offers no evidence indicating that it had good reason for the delay. On the contrary, the state conceded at oral argument that the state, to some extent, was negligent in notifying Smith but that this negligence is accorded less weight under Barker.
 {¶ 13} Although this may be true, it is the state who bears the ultimate responsibility of apprising Smith of the charges against him. Thus, under Barker and its progeny, the state's reasons for the delay are to be considered in conjunction with the prejudice to Smith, notwithstanding the state's concession of negligence and the deference accorded that negligence.
 {¶ 14} "A more neutral reason such as negligence or overcrowded courts should be weighted less heavily but nevertheless should be considered since the ultimate responsibility for such circumstance must rest with the government rather than with the defendant." Barker v.Wingo, 407 U.S. at 531.
 {¶ 15} It is the state's position that Smith has suffered no prejudice as a result of the 18-month delay. The state's only witness to the events was the victim, Ms. McClain, who is still alive and testified that she remembers the events fairly well. Although Smith testified that his memory is less reliant, he, nonetheless, testified that he suffered no anxiety during the interval between his initial release and subsequent arrest because he was unaware that there were any charges pending against him. Under similar circumstances, the state contends, reviewing courts have found much longer delays not prejudicial to a criminal defendant such as Smith. See State v. Triplett, 78 Ohio St.3d 566 (54-month delay);[1] State v. Connor (Sept. 4, 1997), Cuyahoga App. No. 71576, 1997 Ohio App. Lexis 4002 (77-month delay); State v. Stevens (Dec. 22, 1994), Cuyahoga App. No. 67400, 1994 Ohio App. Lexis 5772 (66-month delay).
 {¶ 16} Nonetheless, the lack of prejudice alone is not the deciding factor in determining whether an accused's constitutional right to speedy trial has been infringed.
 {¶ 17} "We regard none of the four factors identified above as either a necessary or sufficient condition to the finding of a deprivation of the right of speedy trial. Rather, they are related factors and must be considered together with such other circumstances as may be relevant. In sum, these factors have no talismanic qualities; courts must still engage in a difficult and sensitive balancing process. But, because we are dealing with a fundamental right of the accused, this process must be carried out with full recognition that the accused's interest in a speedy trial is specifically affirmed in the Constitution."Barker v. Wingo, 407 U.S. at 533.
 {¶ 18} Balancing the reason for the delay with the prejudice to the defendant, the United States Supreme Court in Doggett v. United States,505 U.S. 647, 112 S.Ct. 2686, 120 L.Ed.2d 520, found an eight-and-one-half-year delay a violation of the accused's constitutional speedy trial rights.
 {¶ 19} "Between diligent prosecution and bad-faith delay, official negligence in bringing an accused to trial occupies the middle ground. While not compelling relief in every case where bad-faith delay would make relief virtually automatic, neither is negligence automatically tolerable simply because the accused cannot demonstrate exactly how it has prejudiced him." Id. at 656-657. Finding simple negligence to be weighed more lightly than a deliberate intent to harm the accused's defense, the Doggett court, nonetheless, found that negligence "still falls on the wrong side of the divide between acceptable and unacceptable reasons for delaying a criminal prosecution once it has begun." Id. at 657. To condone "prolonged and unjustifiable delays in prosecution would both penalize many defendants for the state's fault and simply encourage the government to gamble with the interests of criminal suspects assigned a low prosecutorial priority." Id.
 {¶ 20} Viewed in this light, the state's lack of diligence should not inure to its benefit merely because Smith can show little or no demonstrable prejudice. Smith did nothing to evade prosecution. Indeed, his whereabouts were easily ascertainable once the state exerted minimal effort to locate him. Smith should not be penalized merely because the state waited to do so until approximately 18 months had lapsed since his indictment.
 {¶ 21} As stated by Justice White, "only special circumstances presenting a more pressing public need with respect to the case itself should suffice to justify delay." Barker v. Wingo, 407 U.S. at 537
(White, J., concurring). We see no special circumstances in this case. Because the 18-month delay between Smith's indictment and his subsequent arrest is unjustifiable, the trial court did not err in concluding that Smith's constitutional right to speedy trial under the Sixth Amendment to the United States Constitution had been infringed.
Judgment affirmed.
It is ordered that appellee recover from appellant costs herein taxed.
The court finds there were reasonable grounds for this appeal. It is ordered that a special mandate issue out of this court directing the Cuyahoga County Common Pleas Court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Anne L. Kilbane, P.J., and Frank D. Celebrezze, Jr., J., concur.
[1] In Triplett, the Ohio Supreme Court held that a 54-month delay was exceedingly long. The case turned on the cause of the delay, however, which was the accused's refusal to accept the certified mail service. Because the government made reasonable efforts to find the accused, theTriplett court concluded that the accused should not be rewarded for causing the lengthy delay. See State v. Smith, Cuyahoga App. No. 81808, 2003-Ohio-3524, at ¶ 26 (Blackmon, J., dissenting).