OPINION
{¶ 1} This matter is submitted to this court on the record and the briefs of the parties. Appellant, the state of Ohio, appeals the judgment entered by the Portage County Court of Common Pleas. The trial court dismissed the charges pending against appellee, Joseph Larlham. *Page 2 
 {¶ 2} Larlham is the former stepfather of Jane Doe.[1] Larlham was married to Jane Doe's mother. Jane Doe alleged that, while her mother was at work, Larlham engaged in sexual contact and sexual conduct with her. The alleged activity occurred between 1985 and 1987. Jane Doe was less than 13 years old during that time period.
 {¶ 3} In 1988, Larlham was initially charged with rape. Larlham was arrested on the charge. However, later that year, the state dismissed the charge against Larlham, seeking a grand jury indictment. Thereafter, Larlham was released from custody and there were no charges pending against him.
 {¶ 4} On February 9, 1989, Larlham was indicted on one count of gross sexual imposition, in violation of R.C. 2907.05, and three counts of rape, in violation of R.C. 2907.02. The Portage County Sheriffs Department attempted to serve a warrant on the indictment on Larlham on February 25, 1989; March 18, 1989; and November 1, 1990. The final two attempts were at the home of Larlham's brother. All three attempts were unsuccessful.
 {¶ 5} Detective Jack Walden of the Portage County Sheriffs Department testified at the hearing on Larlham's motion to dismiss the indictment. He was one of the officials who attempted to serve the warrant at Larlham's brother's residence. Detective Walden testified that Larlham's brother informed him at the attempt on March 18, 1989 that he believed Larlham was out of the state.
 {¶ 6} The warrant originally contained a statewide pick-up radius. This meant that if Larlham was arrested for any other offense in the state of Ohio, the arresting authority would hold him and contact the Portage County Sheriff's Department. *Page 3 
However, police departments outside of Ohio would not hold him. The other available pick-up radius is a nationwide radius. In this second type, any arrest in the country would require the individual to be held and the Portage County Sheriffs Department be contacted. Generally, the nationwide pick-up radius is used for more serious offenses, such as those in this case. Despite having information that Larlham may be out of the state as early as March 1989, no change was made to expand the pick-up radius of the warrant to a nationwide designation until 2006.
 {¶ 7} Following the dismissal of the original charge, Larlham relocated to Florida, where he had previously lived. From October 1994 through 2006, Larlham was arrested six times in Florida for various offenses. However, because the pick-up radius for his warrant was only statewide, the Portage County Sheriffs Department was never contacted.
 {¶ 8} In 1996, Larlham's mother passed away. Larlham traveled to Ohio to attend the funeral services. While at a memorial service for his mother at his brother's residence, Larlham encountered Jane Doe, who was then in her early twenties and married. Jane Doe was at the memorial service because Larlham's mother was her stepgrandmother. Larlham and Jane Doe had a brief conversation. Larlham informed her that he was living in Florida, that he was thinking of moving to Pennsylvania, and that he had grandchildren.
 {¶ 9} In December 2006, employees of the Portage County Sheriff's Department were reviewing old warrants. At that time, Detective Walden discovered Larlham's warrant. He sought permission to change the status of the pick-up radius to a nationwide radius. Thereafter, he discovered that Larlham had been recently arrested in Volusia County, Florida. He called officials in Volusia County, and, as a result, *Page 4 
Larlham was arrested in Florida that same day. Larlham was subsequently transported to Portage County, Ohio.
 {¶ 10} On February 6, 2007, Larlham filed a motion to dismiss the indictment. Also, Larlham filed a motion to suppress oral statements he had given throughout the initial investigation during the 1980s. A hearing was held on both of Larlham's motions. Following the hearing, the trial court denied Larlham's motion to suppress but granted his motion to dismiss the indictment.
 {¶ 11} The state has timely appealed the trial court's judgment entry dismissing the indictment pursuant to R.C. 2945.67.[2] The state raises the following assignment of error:
 {¶ 12} "The trial court erred when it granted the Appellee's motion to dismiss finding presumptive prejudice from the delay between the Appellee's indictment and service of the indictment constituted a violation of the Appellee's Sixth Amendment right to a speedy trial."
 {¶ 13} This case concerns a defendant's Sixth Amendment right to a speedy trial. However, it is not a "typical" speedy-trial case, in that Larlham does not allege that his statutory speedy-trial rights have been violated. See R.C. 2945.71. Instead, this case concerns the delay that occurred between the filing of the indictment and Larlham's arrest. The Supreme Court of the United States addressed this issue in the case ofBarker v. Wingo[3]
 {¶ 14} "In Barker v. Wingo, the [United States Supreme Court] set forth a four-part test to determine whether the state has violated an accused's right to a speedy trial. *Page 5 
The four factors include (1) the length of the delay, (2) the reason the government assigns to justify the delay, (3) the defendant's responsibility to assert his right to a speedy trial, and (4) the prejudice to the defendant.[4] "[5]
 {¶ 15} The Supreme Court of Ohio has applied an abuse of discretion standard of review in an analysis of the Barker v. Wingo four-prong test to determine whether a trial court properly granted a motion to dismiss on the issue of whether a defendant's Sixth Amendment speedy-trial rights were violated.[6] "The term `abuse of discretion' connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable."[7]
 {¶ 16} The first factor to be considered is the length of the delay. Regarding this factor, the Supreme Court of Ohio has noted that this is "a particularly important factor" and proceeded to quote the following language from the Supreme Court of the United States:
 {¶ 17} "The length of delay is to some extent a triggering mechanism. Until there is some delay which is presumptively prejudicial, there is no necessity for inquiry into the other factors that go into the balance. Nevertheless, because of the imprecision of the right to speedy trial, the length of delay that will provoke such an inquiry is necessarily dependent upon the peculiar circumstances of the case.'"[8]
 {¶ 18} A delay of nearly one year has generally been considered sufficient to be deemed "presumptively prejudicial."[9] In State v.Triplett, the Supreme Court of Ohio *Page 6 
concluded that a 54-month delay from indictment to arrest was "exceedingly long."[10] In Barker v. Wingo, the United States Supreme Court described a delay of over five years from arrest to trial "extraordinary."[11] That court again used the term "extraordinary" to describe an eight-and-one-half year delay between indictment and arrest.[12]
 {¶ 19} In this matter, there was a delay of 17 years and ten months between the date the indictment was filed and the time Larlham was arrested. The delay in this matter nearly equals the delays inTriplett, Barker, and Doggett combined. The lengthy delay in this matter easily meets the "presumptively prejudicial" standard and weighs in favor of granting the motion to dismiss the indictment.
 {¶ 20} The second factor is the reason the government assigns to the delay. There are different amounts of weight to be assigned depending on the degree of the government's fault. As the Supreme Court of Ohio explained:
 {¶ 21} "Where the defendant himself causes the delay, by going into hiding, for instance, and the government pursues him with reasonable diligence, a speedy trial claim would fail.[13 Where the delay is caused by the government's intentional footdragging in order to gain some impermissible advantage at trial, the delay will be weighed heavily against the government. `Between diligent prosecution and bad-faith delay, official negligence in bringing an accused to trial occupies the middle ground.'[14] Negligence, however `still falls on the wrong side of the divide between acceptable and unacceptable reasons for delaying a criminal prosecution once it has begun.'[15] The *Page 7 
longer the delay due to official negligence, the less tolerable the delay becomes.[16 The eight-and-one-half-year delay in Doggett's case, with six years directly attributable to the government's negligence, was too much for the court to countenance."[17]
 {¶ 22} In this matter, the status of the warrant for Larlham was a statewide pickup radius. This was contrary to normal procedures, in that Detective Walden testified that warrants for serious offenses are normally assigned a nationwide pick-up radius. Further, Detective Walden testified that if he were to personally make a designation of this case it would receive a nationwide pick-up radius, since it was an alleged child rape case. Moreover, the designation of the warrant remained at statewide, despite members of the Portage County Sheriffs Department being specifically informed by Larlham's brother as early as 1989 that Larlham may be out of the state. Larlham was arrested six different times in Florida between 1994 and 2006. Had a nationwide radius been assigned to his warrant, he would have easily been arrested on the charges in this matter. In addition, the Portage County Sheriffs Department did not attempt to serve the warrant from 1990 through 2006. The combination of these facts amounts to negligence on the part of the state. This factor weighs in favor of granting the motion to dismiss the indictment.
 {¶ 23} The third factor is the defendant's responsibility to assert his right to a speedy trial. Larlham asserted his speedy-trial right soon after he was arrested. When a defendant does not have knowledge of a pending indictment, time that passes prior to his knowledge of it cannot be held against him.[18] The Supreme Court of the United *Page 8 
States noted that Doggett lived openly under his own name.[19]
Further, he was found within minutes following a simple credit check.[20] However, the Supreme Court of Ohio held that delay can be assigned to an individual who failed to claim certified mail that was sent to an address she provided and was where she was residing.[21]
 {¶ 24} In this matter, Larlham was not actively hiding. He returned to Florida, where he had previously lived. While he lived in Florida, Larlham was arrested for various charges, and he provided his correct name and information each time. Perhaps the most telling fact that Larlham was not hiding was that he returned to Ohio and engaged in a conversation with Jane Doe, who was then an adult. Talking to the alleged victim and informing her where one is living is entirely inconsistent with "hiding." Finally, we note, as was the case inDoggett, that Larlham was quickly found with minimal search efforts. The third factor does not weigh against granting Larlham's motion.
 {¶ 25} The fourth factor is the prejudice to the defendant. There are three general categories that concern prejudice to the defendant: (1) lengthy incarceration before trial; (2) anxiety of the accused regarding pending legal charges against him; and (3) the possibility that the defendant's ability to defend against the charges will be compromised.[22] The most serious of the factors is the final one.[23] "[E]xcessive delay presumptively compromises the reliability of a trial in ways that neither party can prove *Page 9 
or, for that matter, identify."[24] In addition, the importance of presumptive prejudice "increases with the length of the delay."[25]
 {¶ 26} In this matter, the alleged events supporting the charges against Larlham occurred 20 years prior to his arrest. The alleged victim was a preteen at that time and is now an adult. Collectively, the witnesses' ability to accurately recall events would be compromised by the 20-year delay. Presumably, there would be additional, unknown difficulties for Larlham to defend against crimes that allegedly occurred two decades ago. This factor weighs in favor of granting Larlham's motion.
 {¶ 27} The trial court did not abuse its discretion by granting Larlham's motion to dismiss the indictment.
 {¶ 28} The state's assignment of error is without merit.
 {¶ 29} The judgment of the trial court is affirmed.
CYNTHIA WESTCOTT RICE, P.J., MARY JANE TRAPP, J., concur.
[1] The trial court granted the state's motion to amend the indictment to replace the alleged victim's real name with "Jane Doe." Thus, we will refer to the alleged victim as Jane Doe throughout this opinion.
[2] See, also, State v. Hayes (1986), 25 Ohio St.3d 173, 174-175.
[3] Barker v. Wingo (1972), 407 U.S. 514.
[4] Id. at 530-532.
[5] State v. Triplett (1997), 78 Ohio St.3d 566, 568.
[6] State v. Selvage (1997), 80 Ohio St.3d 465, 470.
[7] State v. Adams (1980), 62 Ohio St.2d 151, 157.
[8] (Emphasis added by the Supreme Court of Ohio.) State v.Selvage, 80 Ohio St.3d at 467, quoting Barker v. Wingo,407 U.S. at 530-531.
[9] State v. Selvage, 80 Ohio St.3d at 468, quoting Doggett v. UnitedStates (1992), 505 U.S. 647, 652.
[10] State v. Triplett, 78 Ohio St.3d at 571.
[11] Barker v. Wingo, 407 U.S. at 533.
[12] Doggett v. United States, 505 U.S. at 652.
[13] Doggett v. United States, 505 U.S. at 656.
[14] Id. at 656-657.
[15] Id. at 657.
[16] Id.
[17] State v. Triplett, 78 Ohio St.3d at 570-571.
[18] Doggett v. United States, 505 U.S. at 653-654.
[19] Id. at 649.
[20] Id. at 653-654.
[21] State v. Triplett, 78 Ohio St.3d at 571.
[22] Barker v. Wingo, 407 U.S. at 532.
[23] Id.
[24] Doggett v. United States, 505 U.S. at 655.
[25] Id. at 656. *Page 1