JOURNAL ENTRY AND OPINION *Page 3 
{¶ 1} Defendant-appellant, Shirley Barnes ("Barnes"), appeals the trial court's decision denying her motion to dismiss on speedy trial grounds. Finding merit to the appeal, we reverse.
 {¶ 2} In February 1993, the Cuyahoga County Grand Jury indicted Barnes for one count of theft, a violation of R.C. 2913.02. Barnes was alleged to have unlawfully deprived the Department of Human Services of $2,904 from January 1989 through January 1990 by claiming welfare benefits while she was employed.
 {¶ 3} In May 1993, the trial court held a hearing and determined that Barnes was eligible to participate in a diversion program through the Cuyahoga County Pretrial Diversion Program ("CCPDP"). On May 27, 1993, Barnes signed the CCPDP's Waiver Form, acknowledging her constitutional rights, including a speedy trial, and waiving such rights in order to participate in the program.
 {¶ 4} Barnes also executed an agreement with the prosecutor where, in return for her acceptance into the pretrial diversion program, she agreed to numerous terms, including the waiver of her statutory and constitutional speedy trial rights and the right to be prosecuted within the statute of limitations. She further agreed to make restitution in the amount of $2,904 (to be paid in *Page 4 
monthly payments of $49), and executed a cognovit note in favor of the Cuyahoga County Department of Human Services for the $2,904 she owed.
 {¶ 5} The diversion agreement also provided that Barnes would be subject to the terms in the agreement for a period up to five years and, if, during that time, she violated any terms of the agreement, the prosecutor would initiate immediate prosecution.
 {¶ 6} On March 30, 1994, the court approved Barnes' participation in the diversion program and ordered that the criminal case be placed on the inactive docket until further notice. In its judgment entry, the trial court further recognized that Barnes "knowingly, voluntarily, and intelligently waived" her constitutional and statutory rights to a speedy trial and all periods of limitations established by the statute.
 {¶ 7} The record reflects that Barnes stopped making restitution payments after February 25, 1995. The CCPDP subsequently sent Barnes five letters, between March 5, 1997 and May 5, 1998 (the first two letters appear to have been sent to an address where Barnes no longer resided but the subsequent letters, starting on March 24, 1998, were sent to the address that Barnes later verified as her correct address).[1] Notably, the letter sent on March 24, 1998 *Page 5 
informed Barnes that she must "respond within 10 days of receipt of [the] correspondence," or her "diversion status will be revoked, a warrant issued for [her] arrest and [her] case will be placed on the judge's active docket." The next letter sent on April 28, 1998 advised Barnes that her time to complete the diversion program was soon coming to an end and that any further delay could result in her diversion status being revoked and the prosecutor commencing criminal prosecution.
 {¶ 8} Barnes contacted the CCPDP on May 4, 1998 and spoke with a diversion officer. The officer's notes reflect that Barnes indicated that she had been trying to contact the office and that she needed the address to send the restitution payments. The next day, the CCPDP sent out its final correspondence to Barnes, providing her with the name and contact information of the person with whom she needed to discuss her restitution payments. Barnes never submitted any further payments and neither the CCPDP nor the prosecutor took any further action until September 2006.
 {¶ 9} On September 8, 2006, the state moved to revoke Barnes' diversion status, asking the trial court to reinstate the case on the court's active docket because Barnes failed to make all the required payments of her restitution. The trial court granted the motion on September 13, 2006, issued a capias for Barnes' *Page 6 
arrest, and found that Barnes' "speedy trial and periods of limitations waivers are voided, and time is no longer tolled as of this date." Nearly a year later, Barnes was arrested on the capias and appeared before the court on August 1, 2007.
 {¶ 10} After being assigned counsel, Barnes moved to dismiss the sole count against her on the grounds that her speedy trial rights had been violated. The trial court held a hearing and subsequently denied the motion.
 {¶ 11} Following the denial of her motion to dismiss, Barnes pled no contest and the trial court found her guilty of the single theft count. The trial court further sentenced Barnes to four years of community controlled sanctions and ordered her to make restitution of $1,267 but stayed the order pending her appeal.
 {¶ 12} Barnes appeals, raising the following single assignment of error:
 {¶ 13} "The trial court erred when it failed to grant the appellant's motion to dismiss on the speedy trial violations."
 Standard of Review {¶ 14} Ohio courts differ as to the governing standard of review regarding a challenge of a constitutional speedy trial violation.
 {¶ 15} Relying on the Ohio Supreme Court's decision in State v.Selvage, 80 Ohio St.3d 465, 470, 1997-Ohio-287, the Eleventh District has found that an *Page 7 
abuse of discretion standard applies. See State v. Nieves, 11th Dist. No. 2007-A-0039, 2008-Ohio-534; State v. Larlham, 11th Dist. No. 2007-P-0019, 2007-Ohio-6158, ¶ 15.
 {¶ 16} In Selvage, however, the Ohio Supreme Court did not discuss the applicable standard of review. Instead, the court merely stated that the trial court did not "abuse its discretion in determining that appellee was deprived of her Sixth Amendment right." Selvage, supra, at 470. Significantly, in analyzing whether a constitutional violation occurred, the court relied on the specific findings of fact made by the trial court and gave due deference to those findings but independently analyzed those findings under the governing law. Id. at 467-470. We therefore find that Selvage's use of the term "abuse of discretion" referred to the trial court's factual findings and does not stand for a blanket abuse of discretion review of a trial court's decision.
 {¶ 17} Conversely, other districts have found that appellate review of a trial court's decision regarding a motion to dismiss for a constitutional speedy trial violation involves a mixed question of law and fact. See State v. Stamper, 4th Dist. No. 05CA21, 2006-Ohio-722;State v. Lyon, 5th Dist. No. 2007AP080050, 2008-Ohio-2645. This standard requires a reviewing court to accept the facts as found by the trial court if supported by some competent, credible evidence, but independently form its own legal conclusion in applying those facts to the *Page 8 
balancing test set forth in Barker v. Wingo (1972), 407 U.S. 514. Id.; see, also, State v. Jones (June 4, 1996), 4th Dist. No. 95CA2128, relying on Doggett v. United States (1992), 505 U.S. 647. Thus, under this standard, a reviewing court should apply a de novo standard of review to the legal issues but afford great deference to any findings of fact made by the trial court.
 {¶ 18} Federal courts apply a very similar review. See United Statesv. Watford (C.A.6, 2006), 468 F.3d 891, 900, citing Maples v.Stegall (C.A.6, 2005), 427 F.3d 1020, 1025 ("We review a district court's adjudication of a speedy trial claim de novo, and we review questions of fact for clear error.").
 {¶ 19} We agree with the mixed question of law and fact review and find that it is the appropriate review as opposed to a blanket abuse of discretion.[2] In this case, however, the facts are undisputed and the trial court made no findings. In such instances, the appropriate review is de novo. See State v. Walker, 2d Dist. No. 06AP-810, 2007-Ohio-4666
(applying de novo standard of review because the facts were undisputed);State v. Sears (2005), 166 Ohio App.3d 166 *Page 9 
(holding that trial court did not err in applying Barker factors and finding that defendant was deprived of his Sixth Amendment right to a speedy trial). Accordingly, our review here is simply whether the trial court erred as a matter of law.
 Sixth Amendment Right to a Speedy Trial {¶ 20} Initially, we must address Barnes' waiver of her speedy trial rights executed prior to her acceptance in the CCPDP.
 {¶ 21} It is well-settled that an accused may waive his or her constitutional right to a speedy trial provided that such a waiver is knowingly and voluntarily made. Barker, supra, at 529. The Ohio Supreme Court has recognized that a written waiver, or one made in open court on the record, will defeat a claim of a constitutional speedy trial violation, provided the waiver was knowingly and voluntarily made. SeeState v. King, 70 Ohio St.3d 158, 1994-Ohio-412. But if a waiver becomes void, either through the defendant's revocation or other acts, the speedy trial clock will begin running from that point forward. See, generally, State v. Mintz (1991), 74 Ohio App.3d 62, 67 (recognizing that defendant's speedy trial waiver was voided when he was removed from diversion program).
 {¶ 22} The state argues that Barnes waived her statutory and constitutional speedy trial rights by participating in the pretrial diversion *Page 10 
program and executing the diversion agreement, wherein she agreed to "waive all rights, indefinitely, in regard to * * * speedy trial." We disagree.
 {¶ 23} R.C. 2935.36 governs pretrial diversion programs and directly addresses the waiver requirement and when such waiver becomes void. The statute provides in relevant part:
 "(B) An accused who enters a diversion program shall:
 "(1) Waive, in writing and contingent upon his successful completion of the program, the accused's right to a speedy trial * * *
 "* * *
 "(D) * * * If the accused chooses not to enter the prosecuting attorney's diversion program, or if the accused violates the conditions of the agreement pursuant to which the accused has been released, the accused may be brought to trial upon the charges in the manner provided by law, and the waiver executed pursuant to division (B)(1) of this section shall be void on the date the accused is removed from the program for the violation."
 {¶ 24} Applying the statute, we find that Barnes' waiver was voided on March 30, 1999 — the end of the five-year pretrial diversion program. The statute expressly states that an accused's waiver of speedy trial rights "shall be void on the date that the accused is removed from the program for a violation." R.C. 2935.36(D). Here, in addition to the fact that the diversion agreement provided that Barnes' diversion status would terminate after five years in the program, namely, March 30, 1999, the record evidences that the CCPDP dropped *Page 11 
Barnes from the program as of this date (if not earlier). Prior to the end of her five-year program, the CCPDP mailed Barnes five letters regarding her failure to continue making restitution payments. The CCPDP further reminded Barnes in April 1998 that her time for completing the program was coming to an end under the terms of the diversion agreement and mailed its final correspondence on May 5, 1998 regarding restitution payments. After the expiration of the five-year period, the CCPDP sent no further correspondence.
 {¶ 25} Based on this record, we conclude that Barnes was effectively removed from the program when her eligibility for participation terminated.[3] Accordingly, after her removal from the program on March 30, 1999, Barnes' waiver of a speedy trial became void and the speedy trial clock began to run. See Mintz, supra.
 {¶ 26} Having found that Barnes did not waive her constitutional right to a speedy trial "indefinitely," we next determine whether the state's delay of eight and one-half years to bring Barnes to trial violated her right to a speedy trial.
 {¶ 27} The constitutional right to a speedy trial is guaranteed by theSixth Amendment to the United States Constitution and Section 10, Article I of the Ohio *Page 12 
Constitution. Ohio also provides an accused with a statutory right to be brought to trial within a specified number of days after the accused's arrest, namely, 270 days or 90 days if the person is held in jail in lieu of bail on the pending charges. See R.C. 2945.71 to 2945.73 (the statutory scheme provides for tolling the time for speedy trial purposes when the delay arises from the defendant, e.g., requests for continuances or failure to appear).
 {¶ 28} In examining a constitutional claim on speedy trial grounds, the statutory time requirements of R.C. 2945.71 to 2945.73 are not relevant; instead, courts should employ the balancing test enunciated by the United States Supreme Court in Barker, supra. The test includes considering (1) the length of the delay; (2) the reason for the delay; (3) the defendant's assertion of his or her right to a speedy trial; and (4) the prejudice to the defendant. Id. at 530-32; see, also,Triplett, supra.
 {¶ 29} In this case, we find that the Barker factors weigh heavily in favor of Barnes and required the trial court to grant her motion to dismiss on speedy trial grounds.
 {¶ 30} The first factor, the length of the delay, is the "triggering mechanism" that determines the necessity of inquiry into the other factors. Barker, supra, at 530. Until there is some delay that is presumptively prejudicial, "there is no necessity for inquiry into the other factors that go into the balance." Id. Generally, post-accusation delay of one year is considered "presumptively prejudicial."Doggett, *Page 13 
supra, at fn 1. "[T]he presumption that pretrial delay has prejudiced the accused intensifies over time." Id. at 652. Indeed, inBarker, the United States Supreme Court described a delay of over five years from arrest to trial "extraordinary." Barker, supra, at 533.
 {¶ 31} In this case, the state waited seven and one-half years before moving to reinstate Barnes' case on the active docket, and it was not until a year later that Barnes was brought into court to face the charge. Thus, the delay attributable to the state is eight and one-half years.[4] This undoubtedly triggers a presumption of prejudice and weighs strongly against the state.
 {¶ 32} The second factor is the state's reason for the delay. The weight assigned to this factor depends on the degree of the government's fault. Barker, supra, at 531; see, also, Larlham, supra, at ¶ 20. As the Ohio Supreme Court explained:
 {¶ 33} "Where the defendant himself causes the delay, by going into hiding, for instance, and the government pursues him with reasonable diligence, a speedy trial claim would fail. Where the delay is caused by the government's intentional footdragging in order to gain some impermissible advantage at trial, *Page 14 
the delay will be weighed heavily against the government. `Between diligent prosecution and bad-faith delay, official negligence in bringing an accused to trial occupies the middle ground.' Negligence, however `still falls on the wrong side of the divide between acceptable and unacceptable reasons for delaying a criminal prosecution once it has begun.' The longer the delay due to official negligence, the less tolerable the delay becomes." Triplett, supra, at 570-571, quotingDoggett, supra, at 656-657 (internal citations omitted).
 {¶ 34} Here, the state offers no explanation for its eight and one-half year delay. The state presented no evidence that it was trying to locate Barnes or that Barnes was evading its authority. Through the state's silence, it is readily apparent that the state's failure to timely file a motion to reactivate Barnes' case and to arrest Barnes stemmed from its own negligence. This case obviously fell through the cracks. And although negligence is ordinarily weighted less than a deliberate intent to delay, the lengthy delay here is intolerable and carries a strong presumption of prejudice. See Doggett, supra, at 657. Indeed, as the Barker court noted, "the delay that can be tolerated for an ordinary street crime is considerably less than for a serious, complex conspiracy charge." Id. at 531. Because of the lengthy delay, namely, eight and one-half years, for a rather simple case, and because the state had no reason for the delay, this factor also weighs heavily against the state. *Page 15 
 {¶ 35} The third factor deals with whether Barnes asserted her right to a speedy trial. In discussing this factor, the Barker court explained:
 {¶ 36} "The more serious the deprivation, the more likely a defendant is to complain. The defendant's assertion of his speedy trial right, then, is entitled to strong evidentiary weight in determining whether the defendant is being deprived of the right. We emphasize that failure to assert the right will make it difficult for a defendant to prove that he was denied a speedy trial." Id. at 531-532.
 {¶ 37} Here, Barnes moved to dismiss her case on speedy trial grounds within one month after learning that her case was reactivated. Contrary to the state's assertion, Barnes had no obligation to withdraw from the diversion program and assert this right earlier because she was not facing a criminal prosecution at that time. Indeed, the diversion program provided her an opportunity to avoid a criminal conviction altogether. Conversely, the state clearly dropped the ball by not commencing "immediate prosecution" after Barnes failed to complete the terms of the diversion agreement. Accordingly, we find that this factor, too, weighs in Barnes' favor.
 {¶ 38} Finally, the last Barker factor considers the prejudice to the defendant. *Page 16 
 {¶ 39} Barnes argued below that she was prejudiced because she no longer had accurate account records to contest the amount that she had allegedly defrauded the Department of Human Services. The state failed to challenge this claim below.
 {¶ 40} Additionally, where the length of delay is "extraordinary," such as the instant case, the United States Supreme Court has recognized a strong presumption of prejudice regardless of whether the defendant presented "affirmative proof of particularized prejudice."Doggett, supra, at 655. As stated in Doggett
 {¶ 41} "Barker explicitly recognized that impairment of one's defense is the most difficult form of speedy trial prejudice to prove because time's erosion of exculpatory evidence and testimony `can rarely be shown.' And though time can tilt the case against either side, * * * one cannot generally be sure which of them it has prejudiced more severely. Thus, we generally have to recognize that excessive delay presumptively compromises the reliability of a trial in ways that neither party can prove or, for that matter, identify. While such presumptive prejudice cannot alone carry a Sixth Amendment claim without regard to the otherBarker criteria, it is part of the mix of relevant facts, and its importance increases with the length of the delay." (Internal citations omitted.) Id. at 655-656. *Page 17 
 {¶ 42} Thus, even assuming that Barnes showed little or no demonstrable prejudice, this is not fatal to her claim given the other factors weighing on her side and against the state, namely, the state's unjustifiable and excessive delay in commencing prosecution. Indeed, "[t]o condone `prolonged and unjustifiable delays in prosecution would both penalize many defendants for the state's fault and simply encourage the government to gamble with the interests of criminal suspects assigned a low prosecutorial priority.'" Smith, 2003-Ohio-7076, ¶ 19, quoting Doggett, supra, at 657.
 {¶ 43} Accordingly, applying the Barker factors, we find that the trial court erred in denying Barnes' motion to dismiss.
 {¶ 44} Barnes' sole assignment of error is sustained.
 {¶ 45} Conviction vacated and appellant discharged.
It is ordered that appellant recover from appellee costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure. *Page 18 
COLLEEN CONWAY COONEY, P.J., and MARY EILEEN KILBANE, J., CONCUR
[1] The record also contains a letter dated January 30, 1994 stating that Barnes had successfully completed the diversion program. Because this letter preceded Barnes' admission into the program and Barnes clearly did not rely on the letter because she made payments after the date of the letter, we find the letter irrelevant to the issues raised in this case.
[2] We recognize, however, that this court has applied an abuse of discretion review and a sufficiency of the evidence review. SeeState v. Triplett (July 7, 1995), 8th Dist. No. 67450 (holding that appellant "failed to demonstrate that the trial court abused its discretion or that its judgment was not supported by the evidence"), reversed, Triplett, 78 Ohio St.3d 566, 1997-Ohio-182. Notably, in reversing this court, the Ohio Supreme Court did not criticize our stated standard of review, but it nonetheless did not apply an abuse of discretion. But, see, State v. Smith, 8th Dist. No. 83022,2003-Ohio-7076 (applying a de novo review and finding that "the trial court did not err" in concluding that defendant's constitutional right to a speedy trial had been infringed); State v. Smith, 8th Dist. No. 81808, 2003-Ohio-3524 (applying de novo review).
[3] We find no merit to the state's claim that it "waived" the five-year limitation period set forth in the diversion agreement. We refuse to find that the state can unilaterally extend the time period merely to serve its own purpose of prolonging a speedy trial waiver and defeating a speedy trial claim, especially in the absence of the accused requesting an extension of the time period. Further, given the absence of any correspondence from the CCPDP following the termination of the five-year period, we cannot say that it still considered Barnes a participant in the program.
[4] The record is silent as to why it took the state a year to find Barnes after the capias was issued. Because the state failed to offer any evidence that it diligently pursued Barnes or that Barnes was eluding its authority, we attribute this year of delay to the state. SeeDoggett, supra; cf. Triplett, supra (finding that the delay resulting from defendant's refusal of certified mail was attributable to the defendant and not because of the state's neglect). *Page 1