[Cite as *State v. Paolucci*, 2024-Ohio-1349.]

# IN THE COURT OF APPEALS OF OHIO
## ELEVENTH APPELLATE DISTRICT
## PORTAGE COUNTY

| | |
|---|---|
| STATE OF OHIO,<br>CITY OF RAVENNA, | CASE NO. 2023-P-0088 |
| Plaintiff-Appellee, | Criminal Appeal from the<br>Municipal Court, Ravenna Division |
| - vs - | |
| DENISE PAOLUCCI, | Trial Court No. 2023 CRB 00725 R |
| Defendant-Appellant. | |

**O P I N I O N**

Decided: April 9, 2024
Judgment: Affirmed

*J. Jeffrey Holland*, Holland & Muirden, 1343 Sharon-Copley Road, P.O. Box 345, Sharon Center, OH 44274 (For Plaintiff-Appellee).

*Sarah G. Ogden*, Megargel, Eskridge & Mullins, LLP, 231 South Chestnut Street, Ravenna, OH 44266 (For Defendant-Appellant).

EUGENE A. LUCCI, P.J.

{¶1}    Appellant, Denise Paolucci, appeals the judgment of the Portage County Municipal Court, Ravenna Division, denying her motion to dismiss the underlying criminal complaint for alleged violations of her statutory and constitutional right to a speedy trial. We affirm the trial court's judgment.

{¶2}    Appellant owned several companion animals. On February 23, 2023, an officer from the Portage County Animal Protective League searched her home and seized two horses, ten dogs, four cats, and one bird. On March 10, 2023, the trial court held a

hearing to determine probable cause for the violations in a separate but related case (Case No. 2023 MS 0009R).[1] The trial court found probable cause and ordered appellant to pay a deposit equal to the costs of the care for the animals if she intended to maintain ownership of the same; namely, $7,678.80 every 30 days.

{¶3} On March 21, 2023, criminal complaints were filed against appellant in this matter, i.e., Case No. 2023 CRB 00725 R. The complaint set forth four counts; to wit: Counts One and Two, Cruelty to Companion Animals, misdemeanors of the second degree, in violation of R.C. 959.131(D)(1), and Counts Three and Four, cruelty to animals, misdemeanors of the second degree, in violation of R.C. 959.13(A)(1).

{¶4} On April 3, 2023, the trial court issued a notice of failed service on the complaint and, on May 1, 2023, a warrant was issued for appellant's arrest. Appellant eventually appeared, on May 12, 2023, and was arraigned.

{¶5} The state filed two motions for continuance of pretrials based upon the prosecutor's scheduling conflicts. Each motion was granted on May 31, 2023 and June 16, 2023, respectively. A pretrial was then held on July 25, 2023.

{¶6} On August 7, 2023, appellant filed a motion to dismiss the charges based upon alleged violations of her statutory and constitutional speedy-trial rights. In her motion, appellant claimed that the statutory speedy-trial clock commenced on the date the court determined probable cause for violations under R.C. Chapter 959, i.e., March 10, 2023. Upon receiving notice of probable cause, appellant pointed out she had already

---

1. No transcript of these proceedings was included in the record of the instant appeal. It is not entirely clear why the probable cause hearing was ascribed a different "miscellaneous" case number, but the animals subject to that hearing are the same animals which subjected appellant to criminal liability in the case sub judice. Regardless, both parties appear to agree the hearing took place and probable cause was found to support the removal of the animals in the underlying matter.

2

expended a significant amount of resources for the care and upkeep of the animals at issue. She argued the amount, over $7,600 per month, placed a continued stress and restraint upon her financial liberties. Appellant specifically asserted that:

> [t]he moment probable cause was found, the Defendant's liberties were restrained in connection with those formal charges on which the State seeks to formally try her. Those restrain[t]s include payment of cash deposits, heightened anxiety and concern regarding the Defendant's freedoms and the status of her beloved pets, concerns accompanying these very public accusations the very real fact that the longer her trial is ultimately delayed, the higher the probability that she will not be able to afford to continue to post a bond for the care of her animal[s] and would in fact forfeit her ownership interest in said animals to the Animal Protective League without first ever being afforded the opportunity to have the State of Ohio prove her guilty beyond a reasonable doubt.

{¶7} Appellant additionally made a constitutional challenge to the delay in prosecution, asserting the delay was unreasonable and highly prejudicial to her interest in keeping and maintaining her animals.

{¶8} The state duly responded to appellant's motion to dismiss, contending the arguments were not supported by statutory law and her constitutional arguments were without merit. After considering the parties' positions, on August 29, 2023, the trial court denied the motion.

{¶9} On September 28, 2023, appellant entered a plea of no contest. At the plea hearing, the prosecutor set forth the following factual basis for the charges:

> Upon entering into the home and finding the dogs in the home, [the humane officer] found that there was a hoarding situation occurring, in which there was a large accumulation of urine and feces that had probably accumulated for at least since January 1 of 2023, but probably longer. And that the accumulation of urine and feces created ammonia which made it difficult for the humane officer to breathe. It caused her eyes, nose, and throat to burn.

3

The evidence would further show that ammonia is a toxin to human beings and to animals, and that animals have a greater olfactory sense than human beings. Therefore, when a human being immediately experiences a discomfort, that animals also experience it even more so because they have a greater olfactory sense, and that they were suffering as a result of the urine and feces and the bad air in the residence.

The evidence would also show that the dogs had skin inflammation and reddened skin and hair loss, all having to do with being in contact frequently and for long periods of time with urine and feces, which burns the skin and causes suffering to animals. The evidence would also show that the animals were infested with fle[a]s to a great extent, which caused pain and suffering to the animals.

As for - - and the defendant acknowledged that she was the keeper and caretaker of the animals to the officer. The evidence would also show that on - - for Count 2, under 959.131(D)(1), pertaining to the four cats and one bird, the same allegations about the residence, about the urine, and the fecal ammonia in the house. Birds in particular are susceptible to air that is toxic and that, in fact, there was a veterinarian who determined that the bird had respiratory damage, probably, and they would say that, to a reasonable degree of veterinary medical certainty, was caused by long-term breathing of that air.

And that the cats also suffered from the air in the home, also suffered with infestation of fle[a]s. All of the matters pertaining to the dogs, the cats, and the birds all - - those animals were all observed by veterinarians who had been prepared to testify that, to a reasonable degree of veterinary medical certainty, that all these animals suffered as a result of the defendant's neglect.

As for 959.13(A)(1), pertaining to Count 3, pertaining to one mare, we would indicate that the mare was found with empty water buckets and that the mare drank very quickly when provided with water. That this caused the animal to suffer. We also would indicate that the evidence would show that there is a body condition scoring system of 1 through 9 that is commonly used by humane officers and veterinarians, where 1 is completely emaciated, close to death, 9 is obese, and 5 is normal for horses.

4

And in this case, this was an emaciated horse on a body condition score 1, so it's as low as it could possibly be really without being dead. So it had obviously not been provided with adequate food. And the evidence would show that the defendant was the one who was the custodian and caretaker because she admitted that was the case to the officer.

There was also - - and the animals also were standing in 12 to 18 inches of manure and urine. And the evidence would indicate that when an animal has to stand in its own urine and feces, that it does cause discomfort to the animal. It burns the flesh, just like a diaper rash might. And a veterinarian would acknowledge and say that that was all true. That would have been given as evidence as well.

As for Count Number 4, 959.13(A)(1), all of these being second degree misdemeanors, Your Honor, this animal was also severely underweight. It was a body condition 2 out of 9, which is well below the ideal rate of 5. It was not as bad off as the mare, but very, significantly emaciated and in poor condition.

The animal - - the evidence would also show that the animal had a swollen penis, which was apparently the defendant had been advised at least four years earlier that the penis needed to be - - it was infected. It needed to be amputated. It was extremely painful. It was the only reasonable way to reduce this animal's suffering. She kept the animal in that condition for four years, according to her own admission, and did not do anything about it, and the animal suffered greatly as a result of that condition.

{¶10} After conducting the necessary colloquy, the trial court accepted appellant's plea of no contest and found her guilty on each count. This appeal follows. Appellant assigns the following as error:

{¶11} "The trial court violated Ms. Paolucci's constitutional and statutory rights to a speedy trial."

{¶12} Ohio's speedy trial statutes were implemented "to incorporate the constitutional protection of the right to a speedy trial provided for in the Sixth Amendment

5

Case No. 2023-P-0088

to the United States Constitution and in Section 10, Article I[,] of the Ohio Constitution." *Brecksville v. Cook*, 75 Ohio St.3d 53, 55, 661 N.E.2d 706 (1996), citing *State v. Broughton*, 62 Ohio St.3d 253, 256, 581 N.E.2d 541 (1991). "'The speedy trial guarantee is designed to minimize the possibility of lengthy incarceration prior to trial, to reduce the lesser, but nevertheless substantial, impairment of liberty imposed on an accused while released on bail, and to shorten the disruption of life caused by arrest and the presence of unresolved criminal charges.'" *State v. Triplett*, 78 Ohio St.3d 566, 568, 679 N.E.2d 290 (1997), quoting *United States v. MacDonald*, 456 U.S. 1, 8, 102 S.Ct. 1497, 71 L.Ed.2d 696 (1982). Ohio courts must strictly construe the speedy-trial statutes. *Cook* at 57. The prescribed times for trial set forth in R.C. 2945.71, however, are not absolute in all circumstances, and under R.C. 2945.72, discretionary authority is granted to extend the trial date for certain specified reasons. *See Cook* at 55-56, citing *State v. Wentworth*, 54 Ohio St.2d 171, 173, 375 N.E.2d 424 (1978); R.C. 2945.72.

{¶13} R.C. 2945.71(B)(2), with limited exception, requires "a person against whom a charge of misdemeanor, other than a minor misdemeanor, is pending in a court of record, shall be brought to trial * * * [w]ithin ninety days after the person's arrest or the service of summons, if the offense charged is a misdemeanor of the first or second degree * * *." If an accused is not brought to trial within the time required by R.C. 2945.71, she "shall be discharged" "[u]pon motion made at or prior to the commencement of trial[.]" R.C. 2945.73(B).

{¶14} "Once the defendant demonstrates that [she] was not brought to trial within the applicable statutory limit, she has established a prima facie case for dismissal." *State v. Kist*, 173 Ohio App.3d 158, 2007-Ohio-4773, 877 N.E.2d 747, ¶ 22 (11th Dist.) "The

6

Case No. 2023-P-0088

burden then shifts to the state to demonstrate that as a result of tolling or extension of the statutory time limit, the right to a speedy trial has not been violated." *Id.*, citing *State v. Smith*, 11th Dist. Ashtabula No. 2000-A-0052, 2001 WL 901016, *5 (Aug. 10, 2001), citing *State v. Butcher*, 27 Ohio St.3d 28, 500 N.E.2d 1368 (1986).

{¶15} Appellant initially argues that the statutory speedy-trial clock commenced upon the trial court's finding of probable cause for her animals and depriving her of her property. In support, she cites *Doggett v. United States*, 505 U.S. 647, 112 S.Ct. 2686, 120 L.Ed.2d 520 (1992), for the proposition that speedy-trial rights are invoked upon "arrest, indictment, or other official accusation." *Id.* at 655. In *Doggett*, however, the United States Supreme Court resolved a question as to whether an eight and one-half year delay between a petitioner's indictment and prosecution "violated his *Sixth Amendment right to a speedy trial*." (Emphasis added.) *Id.* at 648. By citing *Doggett* as a basis for her claim that a statutory violation occurred, appellant commingles the different standards of Ohio's statutory scheme and the Sixth Amendment to the United States Constitution. Because *Doggett* applies to the speedy-trial protections afforded by the Sixth Amendment, it does not impact appellant's statutory rights.

{¶16} With this in mind, R.C. 2945.71(B)(2) requires a defendant to be tried within 90 days after arrest or service of summons. Appellant was never arrested and service failed on April 3, 2023. Although an "official allegation" occurred via the March 21, 2023 complaint, due to failure of service, it is unclear appellant was specifically aware of the allegations and, even if she were, the "other official allegation" clause of *Doggett* has not been codified into Ohio's speedy-trial statute, and we decline to expand the language of the statute without an express directive from the legislature.

7

Case No. 2023-P-0088

{¶17}    After the trial court issued a warrant, appellant voluntarily appeared and she was served as well as arraigned on May 12, 2023.  The statutory speedy-trial clock accordingly started running on May 13, 2023.  On May 31, 2023 and on June 16, 2023, the state filed motions to continue based upon scheduling conflicts.  The motions were granted, and appellant does not contest the speedy-trial time tolled from May 31, 2023 until July 25, 2023, based upon these motions.  At this point, only 18 days had elapsed on the speedy trial clock (between May 13 and May 31).  On July 25, 2023 a pretrial was held and, on August 7, 2023, appellant filed her motion to dismiss.  Fourteen days elapsed between these dates for a total of 33 days.  On August 29, 2023, the trial court denied appellant's motion, and on September 28, 2023, appellant pleaded no contest to the charges.  Thirty-one days elapsed between these dates.

{¶18}   In total, although the state contends only 32 days expired, we conclude, at most, 64 taxable days elapsed between appellant's service and her plea and sentence. This is well within the 90-day period defined by R.C. 2945.71(B)(2). Appellant's statutory speedy-trial protections were accordingly not violated.

{¶19}   Next, appellant contends her constitutional speedy-trial rights were violated by the delay. The United States Supreme Court, in *Barker v. Wingo*, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972), adopted a four-factor test to determine whether a criminal defendant has been denied the Constitutional right to a speedy trial. The four factors to be weighed are the length of the delay, the reason for the delay, the accused's assertion of this right, and prejudice suffered by the accused. *Id.* at 530.

{¶20}   First, regarding the "length of the delay," the Supreme Court of Ohio has held that the length of the delay acts as a triggering mechanism to determine the necessity

8

of examining the remaining *Barker* factors. *Triplett*, 78 Ohio St.3d at 569. "The initial consideration is that of the specific delay occasioned by the state. 'Until there is some delay which is presumptively prejudicial, there is no necessity for inquiry into the other factors that go into the balance.'" *State v. O'Brien*, 34 Ohio St.3d 7, 10, 516 N.E.2d 218 (1987), quoting *Barker* at 530. "A delay of nearly one year has generally been considered sufficient to be deemed 'presumptively prejudicial.'" *State v. Larlham*, 11th Dist. Portage No. 2007-P-0019, 2007-Ohio-6158, ¶ 18, quoting *Doggett,* 505 U.S. at 652, fn 1.

{¶21} Initially, the statutory delay between service and ultimate resolution of the case was 64 days, well under 12 months, and therefore appellant was not presumptively prejudiced. *See State v. Bruce*, 2018-Ohio-1980, 113 N.E.3d 15, ¶ 26 (11th Dist.) Thus, there is no need to address the remaining *Barker* factors.

{¶22} Similarly, even if this court utilized the probable cause hearing as a basis for the constitutional speedy-trial clock's commencement, roughly six and one-half months elapsed between the finding of probable cause and the disposition of appellant's prosecution. Six and one-half months is also significantly below the 12-month period deemed presumptively prejudicial.

{¶23} Still, even if the remaining *Barker* factors were considered, we discern no constitutional speedy-trial violation. As noted above, there was not a significant delay in prosecution and any delays caused by the state (i.e., the motions for continuance) were deemed reasonable and for good cause demonstrated. *See* R.C. 2945.72(H) (speedy trial time extended by "the period of any reasonable continuance granted other than upon the accused's own motion").

**{¶24}** We appreciate that appellant expended a large sum of money paying for the care and boarding of the animals. And while this signals a form of financial prejudice, appellant was not required to pay the boarding fees. It also bears noting that the financial prejudice identified by appellant, while relevant, is not among the precise factors identified by the United States Supreme Court in *Barker*, 407 U.S. 514. In that matter, the court considered the general dimensions of the element of prejudice as it relates to a potential constitutional speedy-trial issue. Specifically, the court observed:

> Prejudice * * * should be assessed in the light of the interests of defendants which the speedy trial right was designed to protect. This Court has identified three such interests: (i) to prevent oppressive pretrial incarceration; (ii) to minimize anxiety and concern of the accused; and (iii) to limit the possibility that the defense will be impaired. Of these, the most serious is the last, because the inability of a defendant adequately to prepare his case skews the fairness of the entire system. If witnesses die or disappear during a delay, the prejudice is obvious. There is also prejudice if defense witnesses are unable to recall accurately events of the distant past. Loss of memory, however, is not always reflected in the record because what has been forgotten can rarely be shown.

(Footnote omitted.) *Id.* at 532.

**{¶25}** In this case, appellant was not subject to pretrial incarceration, let alone oppressive incarceration. Moreover, appellant, in her motion to dismiss, asserted she had endured public embarrassment and stress as a result of being accused in the criminal justice system; the charges were pending for approximately six months from the issuance of the charges. Still, the state attempted to serve appellant on April 3, 2023, but service failed. This failure cannot be ascribed to the state's lassitude, negligence, or dilatory tactics. And there is nothing in the record indicating appellant suffered collateral consequences of the prosecution other than loss of the boarding funds and forfeiture of

10

Case No. 2023-P-0088

the animals.  While these points are distressing and might reasonably cause anxiety, they do not necessarily suggest appellant was subjected to undue public embarrassment by virtue of the charges.

{¶26}  Finally, there is nothing in the record indicating the delay in the proceedings impaired any defense appellant would or could have asserted.  Appellant claims that had trial or other dispositional proceedings commenced earlier, she would have had greater incentive to defend herself in order to reclaim the animals.  This is speculative, however.  Appellant elected to plead no contest to the charges after she sought dismissal, and she does not argue the plea was entered unknowingly, unintelligently, or involuntarily.  And, we cannot say any potential defenses to the charges were undermined or even compromised by the delay.

{¶27}  Even considering the *Barker* factors, the only points militating in appellant's favor are the anxiety she felt due to the charges and boarding fees and the financial burden of boarding the animals.  Balancing the parties' relative interests, the length of delay and appellant's knowing, intelligent, and voluntary plea, which resulted in a finding of guilt, demonstrates, as a matter of law, appellant suffered no deprivation of her constitutional speedy-trial right.

{¶28}  Neither appellant's statutory right nor her constitutional rights to a speedy trial were violated.  Appellant's assignment of error lacks merit.

11

Case No. 2023-P-0088

{¶29} For the reasons discussed in this opinion, the judgment of the Portage County Municipal Court, Ravenna Division, is affirmed.

MARY JANE TRAPP, J.,

MATT LYNCH, J.,

concur.