[Cite as *State v. Cochern*, 2018-Ohio-265.]

# Court of Appeals of Ohio

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
No.    104960

# STATE OF OHIO

PLAINTIFF-APPELLEE

vs.

# CHADD M. COCHERN

DEFENDANT-APPELLANT

## JUDGMENT:
AFFIRMED

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-12-569110-A

**BEFORE:**   Kilbane, P.J., Stewart, J., and Blackmon, J.

**RELEASED AND JOURNALIZED:** January 25, 2018

**ATTORNEYS FOR APPELLANT**

Brandon J. Henderson
Justin Weatherly
3238 Lorain Avenue
Cleveland, Ohio   44113-3702


**ATTORNEYS FOR APPELLEE**

Michael C. O'Malley
Cuyahoga County Prosecutor
BY:   Carl Sullivan
Assistant County Prosecutor
Justice Center, 9th Floor
1200 Ontario Street
Cleveland, Ohio   44113

MARY EILEEN KILBANE, P.J.:

{¶1} Defendant-appellant, Chadd Cochern ("Cochern"), appeals his jury conviction for rape, disseminating matter harmful to juveniles, and kidnapping. For the reasons set forth below, we affirm.

{¶2} In April 2013, Cochern was charged in a 12-count indictment arising out of sexual abuse allegations by his former girlfriend's two minor daughters, J.T. and A.T. The indictment charged Cochern with five counts of rape, two counts of gross sexual imposition ("GSI"), four counts of kidnapping, and one count of disseminating matter harmful to juveniles. Each count of rape and GSI carried sexually violent predator specifications. Each count of kidnapping carried sexual motivation and sexually violent predator specifications.

{¶3} Cochern was taken into custody in May 2013. Cochern retained counsel to represent him. At his arraignment, Cochern pled not guilty to the indictment. After the arraignment, Cochern posted a $100,000 surety bond and was released.

{¶4} Thereafter, numerous pretrials were held and continued at Cochern's request. Two trial dates were set and also continued at Cochern's request. In January 2014, Cochern requested a third trial continuance. On January 21, 2014, Cochern and the state stipulated to a calculation of Cochern's speedy trial time, agreeing that 22 days had elapsed. On that date, the trial court granted Cochern's request for a continuance and set a new trial date of March 18, 2014. On March 18, the trial date was continued at the state's request to June 23, 2014, "the first available date for court and counsel,"

because the assistant county prosecutor was engaged in trial in another courtroom. On May 12, 2014, Cochern executed a speedy trial waiver from May 7, 2014 through July 31, 2014.

{¶5} On June 23, 2014, Cochern again moved to continue the trial to August 25, 2014, because his counsel was engaged in trial in federal court. On July 28, Cochern executed a second speedy trial waiver from July 14 through October 31, 2014.

{¶6} The trial court granted Cochern's request for a continuance and set a final pretrial for August 5, 2014, at which Cochern failed to appear. The trial court issued a capias. On August 15, 2014, Cochern appeared in court, and the trial court recalled the capias. On this date, Cochern moved for a continuance of the August 25 trial date, explaining that he wished to retain new counsel. The trial court granted Cochern's request and gave him until September 16, 2014 to retain new counsel.

{¶7} On September 16, 2014, Cochern's bond was revoked, and he was taken into custody for his failure to comply with the conditions of his bond. Cochern was arrested in Lorain County, Ohio in early September 2014. The trial court appointed an assistant public defender to represent Cochern because he had not yet retained new counsel.

{¶8} On October 7, 2014, the trial court set a November 3, 2014 trial date and reinstated Cochern's bond. On October 14, Cochern failed to appear for the scheduled final pretrial, and the trial court again revoked his bond.

**{¶9}** On October 22, 2014, Cochern was taken into custody. On October 24, Cochern's newly retained counsel filed a motion to reinstate his bond. The trial court granted this motion, reinstated Cochern's bond, ordered Cochern released, and set a new trial date of December 9, 2014. In November, Cochern's new counsel requested additional time to prepare for trial and a continuance of the December trial date. The trial court granted this continuance and set a new trial date of February 11, 2015.

**{¶10}** In December 2014, the state moved to revoke Cochern's bond because he had been indicted and arrested for robbery in Portage County, Ohio. The trial court granted the state's motion and revoked Cochern's bond on December 16, 2014. In February 2016, while Cochern was still capias, Cochern's defense counsel filed motions for the following: a bill of particulars, case in chief, discovery, and exculpatory material.

**{¶11}** Cochern was capias until March 18, 2016. On March 25, Cochern filed a motion to reinstate his bond. The trial court never ruled on this motion and Cochern remained incarcerated. In April 2016, a trial was set for July 2016, but was ultimately rescheduled to August 2016 because the trial court was engaged in trial in another matter.

**{¶12}** On August 29, 2016, the matter finally proceeded to a jury trial. Prior to trial, Cochern had moved for dismissal of the indictment arguing that he had been denied the right to a speedy trial. The trial court denied this motion. Prior to jury selection, Cochern executed a jury waiver on the sexually violent predator specifications.

{¶13} At trial, J.T. and A.T.'s mother ("Mother") testified that her relationship with Cochern began in 2009, when J.T. was around four years old, and continued "off and on" for two and a-half years. Mother testified that Cochern was the only white man she had ever dated and that he was the only man named "Chadd" she has dated. She further testified that Cochern had been a frequent presence in her daughters' lives during her relationship with him and that he had resided with her and her daughters for a period of time.

{¶14} Mother explained that she lived with the girls' father, her ex-husband, in a single family home on West 23rd Street from 2006 until he moved out when they separated. In 2008, she met Cochern. Cochern was her next-door neighbor on West 23rd Street _ he lived below her mother in a double. She testified she began dating Cochern in the summer of 2009. She explained that in the winter of 2010, she and her daughters moved into an apartment in the downstairs unit of a double home on West 44th Street. She testified that Cochern lived with them in this unit on West 44th Street.

{¶15} In the summer of 2011, Mother and her daughters moved to an apartment in the upstairs unit of a double near West 40th Street and Clark Avenue. She testified that although she and Cochern were not officially dating at that point, he did visit this home, and their relationship ultimately ended while she lived on West 40th street. In November 2011, the family moved to a downstairs unit on Bush Avenue. She explained that at this time, she was no longer speaking to Cochern.

{¶16} Eleven-year-old J.T. testified as to four separate instances of sexual abuse by Cochern that occurred when she was in kindergarten and first grade, from the time she was five until the age of six.

{¶17} J.T. described three instances of sexual abuse that took place in the apartment she shared with her mother and sisters in the upstairs unit of a double home. J.T. testified that Cochern made her "suck his private part" and that on one occasion, he extorted her to do so in return for fixing the television in her room. J.T. also testified that she remembered a separate occasion when she hid from Cochern under the counter in the kitchen. She explained that Cochern found her there and forced her to perform oral sex on him. She testified that during this assault, her mother was drinking on the porch outside. J.T. testified that Cochern threatened to "whup" her with a belt if she told anyone about either incident. J.T. also described a third incident that took place in this apartment where Cochern forced her to watch him masturbate and ejaculate into the bathroom sink. He then told her to "suck his private part."

{¶18} J.T. next described one instance of sexual assault that occurred while Cochern lived with her family. She explained that Cochern and her family resided in an apartment in the downstairs unit of a double home. J.T. testified that Cochern tied a sock around her eyes to blindfold her and "made [her] suck his private part." She further testified that she told Cochern to "stop putting [the sock] on [her] face."

**{¶19}** J.T.'s younger sister, A.T., also testified. A.T. explained that when she was still too young to go to school, Cochern "made [her] touch his private part" with her hand while in her mother's bedroom.

**{¶20}** The state also called the investigating officer, Detective Jack Lent ("Detective Lent"), J.T. and A.T.'s father, their father's girlfriend, and two of the girls' older cousins to whom they first disclosed the sexual abuse.

**{¶21}** After the close of the state's evidence, the state moved to dismiss Counts 1, 3, 4, and 5 and Cochern moved under Crim.R. 29 for acquittal on Counts 8, 10, and 12. The trial court granted Cochern's motion as to Counts 8 and 12 — kidnapping charges related to the bathroom incident with J.T. and the single incident related to A.T.

**{¶22}** The defense called Cochern's former landlord of the apartment he lived in during most of 2011, Cochern's fianc_e, and a private investigator.

**{¶23}** The jury found Cochern guilty of three counts of rape, one count of disseminating matters harmful to juveniles, and one count of kidnapping with a sexual motivation specification, which were all the remaining counts that related to conduct alleged by J.T. The jury did not find Cochern guilty of the GSI count related to the incident alleged by A.T. The trial court did not find Cochern guilty of any of the relevant sexually violent predator or sexual motivation specifications that were tried to the bench.

**{¶24}** In September 2016, the trial court sentenced Cochern to a term of life in prison with parole eligibility after 25 years. The trial court also determined Cochern to be a Tier III sex offender.

**{¶25}** It is from this order that Cochern now appeals, raising the following three assignments of error for our review:

Assignment of Error One

The evidence was insufficient as a matter of law to support a finding beyond a reasonable doubt that [Cochern] was guilty of rape and kidnapping.

Assignment of Error Two

[Cochern's] convictions for rape, disseminating matter harmful to juveniles, and kidnapping were against the manifest weight of the evidence.

Assignment of Error Three

[Cochern] was unlawfully deprived of his right to a speedy trial.

Sufficiency of the Evidence

**{¶26}** In the first assignment of error, Cochern argues the state did not put forth sufficient evidence to support the jury's finding that he was guilty of Counts 9 and 10 — the rape and kidnapping described by J.T. as occurring in a downstairs unit apartment where Cochern blindfolded her with a sock and forced her to perform fellatio on him.

**{¶27}** A claim of insufficient evidence raises the issue of "'whether the evidence is legally sufficient to support the verdict as a matter of law.'" *State v. Thompkins*, 78 Ohio St.3d 380, 386, 1997-Ohio-52, 678 N.E.2d 541, quoting *Black's Law Dictionary* 1433 (6th Ed.1990). The Ohio Supreme Court has held:

An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence

admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.

*State v. Jenks*, 61 Ohio St.3d 259, 574 N.E. 492 (1991), paragraph two of the syllabus. A reviewing court is not to assess "whether the state's evidence is to be believed, but whether, if believed, the evidence against a defendant would support a conviction." *Thompkins* at 390. "In essence, sufficiency is a test of adequacy." *Id*. at 386.

{¶28} As discussed above, Cochern was convicted of Counts 9 and 10 that related to the blindfolding incident described by J.T. Count 9 charged Cochern with rape in violation of R.C. 2907.02(A)(1)(b), which provides, in relevant part:

No person shall engage in sexual conduct with another who is not the spouse of the offender * * * when * * * [t]he other person is less than thirteen years of age, whether or not the offender knows the age of the other person.

{¶29} Count 10 charged Cochern with kidnapping in violation of R.C. 2905.01(A)(4), which provides, in relevant part:

No person, by force, threat, or deception, or, in the case of a victim under the age of thirteen or mentally incompetent, by any means, shall remove another from the place where the other person is found or restrain the

liberty of the other person, * * * [t]o engage in sexual activity, as defined in [R.C. 2907.01], with the victim against the victim's will[.]

**{¶30}** Cochern admits that "the elements of [rape under] R.C. 2907.02(A)(1)(b) and [kidnapping under] R.C. 2905.01(A)(4) are present in [J.T.'s] testimony" as to Counts 9 and 10. He argues, however, that the state's timeline "incontrovertibly" shows that he could not have committed these offenses. Cochern points specifically to the conflicting testimony of J.T. and Mother regarding where the family lived and the status of Cochern and Mother's relationship at the time J.T. alleged this incident to have occurred. This argument is unpersuasive.

**{¶31}** As we noted above, the test for sufficiency of the evidence is one of adequacy. *Thompkins* at 390. We are not to assess "whether the state's evidence is to be believed, but whether, if believed, the evidence against a defendant would support a conviction." Cochern concedes that the evidence put forth by the state as to Counts 9 and 10 was sufficient to meet each required element of rape and kidnapping, but essentially contends that conflicting evidence precludes his conviction on those counts. We note that Cochern also relies on the contradictory testimony of J.T. and Mother in support of his manifest weight challenge in the second assignment of error. Accordingly, we will address this argument with his second assignment of error.

**{¶32}** At trial, J.T. testified that Cochern engaged in sexual conduct with her _ she testified that Cochern forced her to perform fellatio. The state established that Cochern restrained J.T.'s liberty. J.T. testified that Cochern used a sock to blindfold her and

ignored her pleas to "stop putting [the sock] on [her] face." The state established that J.T. was under 13 at the time of this rape and kidnapping — she was 11 at the time of trial and the state used her ages in kindergarten and first grades as a time frame to elicit her testimony that she was five and six when Cochern sexually abused her.

{¶33} In viewing the evidence presented in a light most favorable to the state, we find that the jury rationally found the essential elements of rape and kidnapping proven beyond a reasonable doubt. Accordingly, the first assignment of error is overruled.

## Manifest Weight

{¶34} In the second assignment of error, Cochern argues that his convictions are against the manifest weight of the evidence in light of inconsistencies in J.T.'s testimony as well as conflicting testimony between J.T. and her mother related to the time line of the sexual abuse. He also argues that police investigation of J.T.'s allegations was "minimal."

{¶35} Unlike a review for sufficiency of the evidence, a challenge to the manifest weight of the evidence attacks the credibility of the evidence presented. *State v. Calhoun*, 8th Dist. Cuyahoga No. 105442, 2017-Ohio-8488, ¶ 41, citing *Thompkins*, 78 Ohio St.3d at 387, 1997-Ohio-52, 678 N.E.2d 541. Because the standard of review for a manifest weight challenge is broader than a review for sufficiency of the evidence, a reviewing court may determine that a judgment is sustained by sufficient evidence but nevertheless conclude that the judgment is against the manifest weight of the evidence. *Id.*, citing *State v. Robinson*, 162 Ohio St. 486, 487, 124 N.E.2d 148 (1955).

**{¶36}** In determining whether a conviction is against the manifest weight of the evidence, we function as a "thirteenth juror." *Id.* We review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. *Id.*, quoting *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1983). We note that our "discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." *Id.*

**{¶37}** Cochern points to inconsistencies between J.T.'s accounts of the sexual abuse initially given to responding officers, in the interview she gave to Cleveland Police Detective Jack Lent, and in her trial testimony. Cochern's argument focuses on J.T.'s use of present-tense language when describing Cochern's actions in the interview she gave to Detective Lent. Cochern argues that J.T.'s use of present-tense language suggests the abuse was ongoing and indicates that she had mistaken Cochern as her abuser as he was no longer in contact with her and her family at that point in time. Cochern, relying on the same argument put forth in his first assignment of error, also argues that the time line presented by the state and the conflicting testimony of J.T. and her Mother as to this time line suggests his innocence. Specifically, he points to J.T.'s testimony that she remembers the abuse that took place while Cochern lived with her

family to have occurred *after* the abuse that took place in the upstairs unit apartment near West 40th Street and Clark Avenue.

{¶38}   Cochern also points to Mother's testimony that he lived with them in a downstairs unit apartment on West 44th Street *before* they moved to the upstairs unit apartment.   We find these arguments unpersuasive.

{¶39} This court has held that "a defendant is not entitled to reversal on manifest weight grounds merely because certain aspects of a witness's testimony are not credible or were inconsistent or contradictory."   *State v. Nitsche*, 2016-Ohio-3170, 66 N.E.3d 135, ¶ 45 (8th Dist.).   "The decision whether, and to what extent, to believe the testimony of a particular witness is 'within the peculiar competence of the factfinder, who has seen and heard the witness.'"   *Id.*, quoting *State v. Johnson*, 8th Dist. Cuyahoga No. 99822, 2014-Ohio-494, ¶ 54.

{¶40} Additionally, we note that the exact date and time of the offense is not an essential element required to secure a rape conviction.   *State v. Sellards*, 17 Ohio St.3d 169, 171, 478 N.E.2d 781 (1985).   This court has noted "'[i]t is well established that, particularly in cases involving sexual misconduct with a child, the precise times and dates of the alleged offense or offenses oftentimes [sic] cannot be determined with specificity.'"   *State v. Valentine*, 8th Dist. Cuyahoga No. 71301, 1997 Ohio App. LEXIS 3094, *4 (July 17, 1997), quoting *State v. Daniel*, 97 Ohio App.3d 548, 556, 647 N.E.2d 174 (10th Dist.1994).   In *Valentine*, we further noted that "[t]his rule in Ohio has been established because 'in many cases involving child sexual abuse, the victims are children

of tender years who are simply unable to remember exact dates and times, particularly where the crimes involve a repeated course of conduct over an extended period of time.'" *Id.*, quoting *State v. Mundy*, 99 Ohio App.3d 275, 296, 650 N.E.2d 502 (2d Dist.1994).

{¶41} Upon review of the entire record, we do not find that the evidence presented weighs heavily against Cochern's convictions. J.T. provided detailed testimony as to each act of sexual abuse charged in the indictment. She described in detail the areas in each home in which she remembered each act to have occurred. She identified Cochern as her abuser when she made the allegations at the age of 7 and again at trial when she was 11 years old, noting that he was the only person she knew by the name of "Chadd." The jury's finding that her testimony was credible was reasonable despite her possible confusion as to the sequence of each instance of sexual abuse given her young age at the time of the abuse.

{¶42} We find that Cochern's argument that the police investigation of J.T.'s allegations was "minimal" and so focused on him that "the investigating officer failed to collect essential evidence" has no bearing on the evidence the jury heard in reaching its determination of his guilt.

{¶43} Based on the foregoing, we do not find that the jury lost its way and created such a manifest miscarriage of justice that Cochern's convictions are against the manifest weight of the evidence. Accordingly, the second assignment of error is overruled.

<u>Speedy Trial</u>

**{¶44}** In the third assignment of error, Cochern relies on federal case law for the proposition that his March 25, 2016 motion to reinstate his bond was the functional equivalent of a demand for speedy trial. He argues that the state violated his right to a speedy trial because it failed to bring him to trial within 90 days of the filing of this motion. Although this argument is creative, we ultimately find it unpersuasive.

**{¶45}** The Ohio Supreme Court discussed the constitutional and statutory rights to a speedy trial in *State v. Baker*, 78 Ohio St.3d 108, 676 N.E.2d 883 (1996):

> The right to a speedy trial is guaranteed by the Sixth Amendment to the United States Constitution and Section 10, Article I of the Ohio Constitution. The individual states are obligated under the Fourteenth Amendment to afford a person accused of a crime such a right. *Klopfer v. North Carolina*, 386 U.S. 213, 222-223, 87 S.Ct. 988, 993, 18 L.Ed.2d 1, 7-8 (1967). However, the states are free to prescribe a reasonable period of time to conform to constitutional requirements. *Barker v. Wingo*, 407 U.S. 514, 523, 92 S.Ct. 2182, 2188, 33 L.Ed.2d 101, 113 (1972). In response to this constitutional mandate, Ohio has enacted R.C. 2945.71 to 2945.73, which designate specific time requirements for the state to bring an accused to trial.

*Id*. at 110.

**{¶46}** In arguing his speedy trial claim, Cochern conflates the distinct standards of review and case law surrounding the separate constitutional and statutory rights to a

speedy trial.    Therefore,  we  will  review  his  claim  within  the  paradigms  of  both

constitutional and statutory speedy trial protections.

<u>Constitutional Right to a Speedy Trial</u>

**{¶47}** Our  review  of  a  challenge  of  a  constitutional  speedy  trial  violation  often

raises a mixed question of law and fact.    *State v. Barnes*, 8th Dist. Cuyahoga No. 90847,

2008-Ohio-5472, ¶ 19.    We apply a de novo review to the legal issues, but afford great

deference to any factual findings made by the trial court.    *Id.*    This court has held that in

cases  such  as  the  present  matter,  where  the  facts  underlying  a  defendant's  claim  of  a

violation of his or her constitutional right to a speedy trial are undisputed and the trial

court  made  no  findings,  we  apply  a  de  novo  standard  of  review.    *Id.*    In  examining  a

constitutional  claim  on  speedy  trial  grounds,  the  statutory  time  requirements  of  R.C.

2945.71  to  2945.73  are  not  relevant;  instead,  courts  should  employ  the  balancing  test

enunciated by the United States Supreme Court in *Barker v. Wingo*, 407 U.S. 514, 530, 92

S.Ct. 2182, 33 L.Ed.2d 101 (1972).    *Barnes* at ¶ 28.

**{¶48}** In *Barker*, the United States Supreme Court identified the following factors

a reviewing courts should assess in determining whether a defendant was deprived of his

or her Sixth Amendment right to a speedy trial:    (1) the length of the delay, (2) the reason

for the delay, (3) the accused's assertion of his or her right to a speedy trial, and (4) the

prejudice to the accused as a result of the delay.    *Barker*.    The *Barker* court went on to

explain:

> We regard none of the four factors identified above as either a necessary or
> sufficient condition to the finding of a deprivation of the right of speedy

trial. Rather, they are related factors and must be considered together with such other circumstances as may be relevant. In sum, these factors have no talismanic qualities; courts must still engage in a difficult and sensitive balancing process. But, because we are dealing with a fundamental right of the accused, this process must be carried out with full recognition that the accused's interest in a speedy trial is specifically affirmed in the Constitution.

*Id.* at 533.

**{¶49}** We note that "[t]he first factor, the length of the delay, is a 'triggering mechanism,' determining the necessity of inquiry into the other factors." *State v. Robinson*, 8th Dist. Cuyahoga No. 105243, 2017-Ohio-6895, ¶ 9, quoting *State v. Triplett*, 78 Ohio St.3d 566, 569, 679 N.E.2d 290, citing *Barker* at 530. Unless there is some delay which is "presumptively prejudicial, there is no necessity for inquiry into the other factors that go into the balance." *Id.*, quoting *Barker* at 530. Post-accusation delay approaching one year is generally found to be presumptively prejudicial. *Id.*, citing *Doggett v. United States*, 505 U.S. 647, 652, 112 S.Ct. 2686, 120 L.Ed.2d 520 (1992), fn. 1.

**{¶50}** Cochern's speedy trial argument focuses only on the time from his rearrest in March 2016 until trial in August 2016. As we discuss below, he acknowledges that under Ohio law, his statuory speedy trial clock begins anew because he was capias from December 2014 until March 2016. However, for purposes of his constitutional speedy trial analysis, "[t]he length of the delay is measured from the date of the indictment or the date of the arrest, whichever is earlier." *United States v. Marion*, 404 U.S. 307, 320, 92 S.Ct. 455, 30 L.Ed.2d 468 (1971). Because a constitutional speedy trial analysis is less

formulaic than that of the statutory speedy trial protections under Ohio law, there is no "clock" to restart, rather, under a constitutional speedy trial analysis, this time is attributable to Cochern, as will be discussed below.

Length of the Delay

{¶51} We find the more than three-year period from Cochern's initial arrest to the commencement of trial was presumptively prejudicial. Accordingly, we must engage in an inquiry of the *Barker* factors. "Once the *Barker* analysis is triggered, the length of delay, beyond the initial threshold showing, is again considered and balanced against the other relevant factors." *Robinson* at _ 10.

{¶52} In *Robinson*, we found that the length of the delay _ 17 months _ weighed only slightly in favor of the defendant Robinson, who was incarcerated on two unrelated cases and was unaware of the charges against him. *Id.* at _ 13. Similarly, the almost 40-month delay in the present matter was in large part due to Cochern's incarceration in Lorain and Portage counties on unrelated matters and also attributable to his requests for continuances and for new counsel.

{¶53} In *Triplett*, the Ohio Supreme Court found that a 54-month delay did not violate the defendant's constitutional right to a speedy trial. The *Triplett* court noted that one of the interests the Sixth Amendment was designed to protect is the freedom from extended pretrial incarceration. We note that of the almost 40 months from Cochern's initial arrest to trial, Cochern served less than six months in jail cumulatively due to this

matter. Cochern's lengthiest period of pretrial incarceration occurred after the trial court had twice reinstated his bond after his failure to appear.

{¶54} Accordingly, we find that this factor weighs only slightly in favor of Cochern. *Robinson* at _ 13; *Triplett* at 569.

## Reason for the Delay

{¶55} The second factor we must consider under *Barker* is the reason for the delay. In determining if the reason for the delay should weigh in favor of the accused or the state, if an accused caused or contributed to the delay, this factor would weigh heavily against him or her. *Id.*, citing *State v. Smith*, 8th Dist. Cuyahoga No. 81808, 2003-Ohio-3524, ¶ 14. Here, the record reflects that from May 2013 until February 2015, all continuances were made at Cochern's request with the exception of a continuance of the trial date from March 18, 2014 until June 23, 2014 due to the assistant county prosecutor's unavailability. From December 2014 to March 2016, Cochern was capias and unavailable to appear for trial due to his arrest and incarceration in another county. Thereafter, trial was set for July 2016, but ultimately was reset to late August 2016 due to the trial court's unavailability. We note that the majority of these delays, notably the lengthiest period of delay, were attributable to Cochern's actions. Under *Robinson*, this factor weighs heavily against Cochern because he caused the majority of the delay in this matter.

## Cochern's Assertion of his Right to a Speedy Trial

{¶56} We next consider Cochern's assertion of his right to a speedy trial. An accused's assertion of, or failure to assert, his or her right to a speedy trial is a factor to be considered in determining whether his or her constitutional rights were violated. *Id.*, citing *Barker*, 407 U.S. at 528, 92 S.Ct. 2182, 33 L.Ed.2d 101; *Triplett*, 78 Ohio St.3d at 570, 679 N.E.2d 290. Cochern, relying on *Maples v. Stegall*, 427 F.3d 1020, 1029 (6th Cir.2005), argues that his March 2016 motion to reinstate his bond was a demand for speedy trial. In *Maples*, the Sixth Circuit noted that it "recognizes a request for bail as the functional equivalent of the request for a speedy trial." *Id.*, citing *Redd v. Sowders*, 809 F.2d 1266, 1271 (6th Cir.1987); *Cain v. Smith*, 686 F.2d 374, 384 (6th Cir.1982). The Ohio Supreme Court has held that a defendant's timely assertion should be afforded moderate weight. *Triplett* at 570.

{¶57} The strength of the defendant's efforts in asserting his constitutional right to a speedy trial must also be given consideration. *Barker* at 531 ("The strength of [a defendant's] efforts will be affected by the length of the delay, to some extent by the reason for the delay, and most particularly by the personal prejudice, which is not always readily identifiable, that he experiences. The more serious the deprivation, the more likely a defendant is to complain.") A delay from a defendant's assertion of his constitutional right to a speedy trial until the time he seeks dismissal on this basis must be weighted. *State v. Walker*, 10th Dist. Franklin No. 06AP-810, 2007-Ohio-4666, ¶ 31. We note that Cochern moved for dismissal of these charges on the day of trial, more than five months

after he filed the motion to reinstate his bond, which he argues was a demand for speedy trial.

## Prejudice

**{¶58}** Lastly, under *Barker*, we consider prejudice to Cochern as a result of the delay. "In *Barker*, the United States Supreme Court identified three interests that the speedy-trial right is designed to protect: (1) oppressive pretrial incarceration, (2) the anxiety and concern of the accused, and (3) the possibility that the accused's defense will be impaired." *Robinson* at ¶ 17, citing *Barker* at 532. "Of these, the most serious is the last, because the inability of a defendant adequately to prepare his case skews the fairness of the entire system." *Id.*, quoting *Barker*. A defendant is prejudiced if a witness dies, disappears, or is unable to recall accurately events of the distant past. *Id.*

**{¶59}** Cochern's argument focuses on the five-month delay from his rearrest to trial. He does not argue that this delay or the larger 40-month delay prevented him from mounting a defense nor does he make a showing of prejudice.

**{¶60}** In balancing the foregoing, we do not find that Cochern's constitutional speedy trial right was violated. Cochern contributed to the delay, delayed forcefully asserting his right to a speedy trial, and cannot articulate any prejudice resulting from the delay.

## Statutory Right to a Speedy Trial

**{¶61}** We next consider Cochern's statutory right to a speedy trial. Our standard of review of an appeal raising a speedy trial issue is to count the expired days as directed

by R.C. 2945.71, et seq. *Cleveland v. Sheldon*, 8th Dist. Cuyahoga No. 82319, 2003-Ohio-6331, ¶ 18. Where we find ambiguity, we construe the record in favor of the accused. *Id.*

{¶62} We note that Ohio's statutory speedy trial provisions of R.C. 2945.71, et seq., are mandatory and must be strictly complied with by the trial court. *Id.* at ¶ 16. Under R.C. 2945.71(C)(2), a person against whom a felony charge is pending must be brought to trial within 270 days after his arrest. R.C. 2945.71(E) provides that for purposes of computing time under R.C. 2945.71(C)(2), "each day during which the accused is held in jail in lieu of bail on the pending charges shall be counted as three days." R.C. 2945.72 lists the following circumstances under which the time set forth in R.C. 2945.71 is tolled:

> (A) Any period during which the accused is unavailable for hearing or trial, by reason of other criminal proceedings against him, within or outside the state * * * provided that the prosecution exercises reasonable diligence to secure his availability;
>
> * * *
>
> (E) Any period of delay necessitated by reason of a plea in bar or abatement, motion, proceeding, or action made or instituted by the accused;
>
> * * *
>
> (H) The period of any continuance granted on the accused's own motion, and the period of any reasonable continuance granted other than upon the accused's own motion.

{¶63} Cochern acknowledges that his own actions resulted in delaying trial in the present matter from December 2014 until March 2016, during which time he was

capiased and unavailable for trial because he was incarcerated in another jurisdiction. Cochern also recognizes that in light of this self-made delay, his speedy trial clock under R.C. 2945.71 began anew on March 18, 2016 under *State v. Bauer*, 61 Ohio St.2d 83, 399 N.E.2d 555 (1980) (holding that a defendant who fails to appear at a scheduled trial, and whose trial must therefore be rescheduled for a later date, waives his right to assert the provisions of R.C. 2945.71 through 2945.73 for that period of time which elapses from his initial arrest to the date he is subsequently rearrested if he forfeited his appearance bond.)

{¶64} From the time of his rearrest on March 18, 2016, Cochern's speedy trial time ran 3-for-1 under R.C. 2945.72 because he was incarcerated. Accordingly, from March 18 until March 23, 2016, 15 speedy trial days elapsed. Cochern argues that after he asserted his right to a speedy trial by filing a motion to reinstate his bond on March 25, 2016, nothing occurred that served to toll his speedy trial time. The docket reflects, however, multiple continuances of pretrial conferences made at Cochern's request on March 24, April 13, May 11, June 1, and June 20, 2016. Under, R.C. 2945.72(E) and (H), these continuances tolled his statutory speedy trial clock from March 24 until July 14, 2016. We note that Cochern's motion for reinstatement of his bond, relevant to a constitutional speedy trial analysis, is not relevant to a calculation of his statutory speedy trial time.

{¶65} From July 14, 2016, to the scheduled trial date of July 27, 2016, Cochern's speedy trial time ran from 21 to 54 days. On July 27, 2016, the trial court set a new final

pretrial and a new trial date of August 29, 2016, due to its unavailability because of a trial in another matter.

{¶66} R.C. 2945.72 provides that a defendant's statutory speedy trial time may be tolled by a "period of any reasonable continuance granted other than upon the accused's own motion." This court has held that "any requests by either the state or the court itself for a continuance are infringements upon the defendant's constitutional right, and, thus, subject to scrutiny; consequently, the grounds for the request must be set forth in a journal entry." *State v. Phillips*, 8th Dist. Cuyahoga No. 82886, 2004-Ohio-484, citing *State v. Baker*, 92 Ohio App.3d 516, 636 N.E.2d 363 (8th Dist.1993). The Ohio Supreme Court has held that "[t]he record of the trial court must in some manner affirmatively demonstrate that a sua sponte continuance by the court was reasonable in light of its necessity or purpose." *State v. Lee*, 48 Ohio St.2d 208, 209, 357 N.E.2d 1095 (1976).

{¶67} Here, the trial court's journal entry stated that the "court engaged in trial in case number 600352." We find that this 33-day continuance was reasonable in both its length and purpose.

{¶68} Based on the foregoing, we find that Cochern's statutory right to a speedy trial was not violated. Accordingly, the trial court did not err in denying Cochern's motion to dismiss.

{¶69} Having found no violation of Cochern's constitutional and statutory speedy trial rights, his third assignment of error is overruled.

{¶70} Judgment is affirmed.

It is ordered that appellee recover from appellant the costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.    The defendant's conviction having been affirmed, any bail pending appeal is terminated.   Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____

_____
MARY EILEEN KILBANE, PRESIDING    JUDGE

 MELODY J. STEWART, J., and
 PATRICIA ANN BLACKMON, J., CONCUR