[Cite as *State v. Slater*, 2023-Ohio-608.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| Plaintiff-Appellee, | : | |
| | | No. 111536 |
| v. | : | |
| DANIEL SLATER, | : | |
| Defendant-Appellant. | : | |

### JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** March 2, 2023

Criminal Appeal from the Cuyahoga County Court of Common Pleas
Case No. CR-20-651514-A

### *Appearances:*

Michael C. O'Malley, Cuyahoga County Prosecuting Attorney, and Zachary W. Anderson, Assistant Prosecuting Attorney, *for appellee.*

Richard E. Hackerd, *for appellant.*

EILEEN A. GALLAGHER, P.J.:

{¶ 1} Defendant-appellant Daniel Slater ("Slater") appeals his convictions for aggravated vehicular assault and operating a vehicle while under the influence of alcohol, convictions sustained through guilty pleas entered in the Cuyahoga County Court of Common Pleas. He contends that his trial counsel was ineffective

and that the trial court erred by not dismissing the indictment, sua sponte, to preserve his speedy-trial rights. For the reasons that follow, we affirm.

## I. Factual Background and Procedural History

{¶ 2} On September 29, 2020, a Cuyahoga County Grand Jury indicted Slater for aggravated vehicular assault and operating a vehicle while under the influence of alcohol or drugs. The charges stem from a vehicle collision that occurred on June 30, 2020. The state related at the sentencing hearing that Slater was "driving around 60 miles per hour" down a residential street, drove through a four-way-stop intersection without stopping and struck another vehicle. The state said the other vehicle flipped over and collided with at least one nearby parked vehicle. The two occupants of the flipped vehicle were injured; one suffered a broken arm and the other suffered a fractured pelvis, liver lacerations and spleen damage significant enough to require surgical removal of the spleen. Hospital staff drew Slater's blood at the hospital after the accident and, according to the state, Slater's blood alcohol concentration was found to be "about three times the legal limit."

{¶ 3} On January 11, 2022, the trial court held a hearing and addressed a letter Slater had written to the court requesting that the court disqualify defense counsel. Slater complained that his counsel was not communicating with him to his satisfaction. In discussing that complaint, Slater said the following:

> Like, when this case first happened, you know, he was asking me things like he should, like, you know, about the case, like, being at the hospital, did I give them my permission to take blood and all that. I never gave nobody permission to do any of that. Like, you know what I'm saying? Like, it went from that to just straight — just, jail, jail, jail, jail, jail.

{¶ 4} The state described the circumstances of the blood draw at the hearing as follows:

> The defendant was incapacitated, and there they were trying to perform surgery to repair some damage to a wrist. And the blood law, which is a non-State action under — counsel and I have gone back and forth about this. His blood alcohol content was .243, which is about three times the legal limit.

{¶ 5} Slater ultimately changed his mind as to the motion to disqualify, confirming to the court at the hearing that he could work with defense counsel.

{¶ 6} On March 4, 2022, Slater pleaded guilty to two counts of aggravated vehicular assault in violation of R.C. 2903.08(A)(1)(a) and one count of operating a vehicle under the influence of alcohol or drugs ("OVI") in violation of R.C. 4511.19(A)(1)(g). The remaining counts in the indictment were dismissed.

{¶ 7} On April 5, 2022, the trial court sentenced Slater to four years in prison on each of the aggravated-vehicular-assault counts and six months in county jail on the OVI count. The court imposed the felony sentences consecutively; the OVI sentence was run concurrently to the first felony prison sentence. In the aggregate, the trial court sentenced Slater to eight years in prison. Slater received jail-time credit for 182 days.

{¶ 8} Slater appealed and raises two assignments of error for review:

> First Assignment of Error: The trial [c]ourt committed plain error when it denied Daniel Slater his constitutional right to a speedy trial as guaranteed under the United States and Ohio constitutions.

> Second Assignment of Error: Appellant's trial counsel was ineffective when he failed to file a motion to suppress evidence or a motion to dismiss for want of speedy trial.

## II. Law and Analysis

### A. First Assignment of Error – Speedy Trial

{¶ 9} "A criminal defendant has a right to a speedy trial under the Ohio Revised Code, the Ohio Constitution, and the Fifth and Sixth Amendments to the United States Constitution." *State v. Adams*, 144 Ohio St.3d 429, 2015-Ohio-3954, 45 N.E.3d 127, ¶ 80; *see also State v. Taylor*, 98 Ohio St.3d 27, 2002-Ohio-7017, 781 N.E.2d 72, ¶ 32 ("In addition [to a defendant's statutory speedy-trial rights], an accused is guaranteed the constitutional right to a speedy trial pursuant to the Sixth and Fourteenth Amendments to the United States Constitution and Section 10, Article I of the Ohio Constitution."). While Slater's assignment of error only references his constitutional right to a speedy trial, he argues that both his statutory and constitutional speedy-trial rights were violated in this matter. We find no merit to the argument, because Slater waived his statutory speedy-trial rights by pleading guilty and there was no violation of his constitutional speedy-trial rights.

### 1. Ohio's Speedy Trial Act

{¶ 10} Ohio law requires that "[a] person against whom a charge of felony is pending * * * [s]hall be brought to trial within two hundred seventy days after the person's arrest." R.C. 2945.71(C)(2).[1] "The day of arrest does not count when computing speedy-trial time." *E.g.*, *Adams* at ¶ 82, fn. 7. Further, "each day during

---

[1] Misdemeanor charges must be brought to trial more quickly — R.C. 2945.71(B) — but where a combination of felonies and misdemeanors in an indictment "all arose out of the same act or transaction," as here, the defendant must be brought to trial "on all of the charges within the time period required for the highest degree of offense charged." R.C. 2945.71(D).

which the accused is held in jail in lieu of bail on the pending charge shall be counted as three days." R.C. 2945.71(E). But the time in which an accused must be brought to trial may be extended under certain circumstances. *E.g.*, *Cleveland v. Thurman*, 8th Dist. Cuyahoga No. 111410, 2023-Ohio-301, ¶ 17; *see also* R.C. 2945.72.

{¶ 11} The parties agree that certain tolling events occurred in this case but disagree about the extent of the tolling. Slater says that the speedy-trial computation between his arrest and guilty plea is 622 days. The state's computation is 130 days. We need not address which computation is correct in considering Slater's statutory-speedy-trial arguments, though, because Slater waived his statutory speedy-trial rights.

{¶ 12} When a defendant enters a guilty plea, they generally waive all appealable errors that may have occurred unless those errors are shown to have precluded the defendant from entering a knowing and voluntary plea. *State v. Jabbaar*, 8th Dist. Cuyahoga No. 98218, 2013-Ohio-2897, ¶ 5; *State v. Milczewski*, 8th Dist. Cuyahoga No. 97138, 2012-Ohio-1743, ¶ 5; *State v. Kelley*, 57 Ohio St.3d 127, 566 N.E.2d 658 (1991), paragraph two of the syllabus. A defendant waives their statutory speedy-trial rights by entering a guilty plea. *Kelley* at paragraph one of the syllabus ("A plea of guilty waives a defendant's right to challenge his or her conviction on statutory speedy trial grounds pursuant to R.C. 2945.71(B)(2)."); *see also, e.g.*, *State v. Branch*, 9 Ohio App.3d 160, 162, 458 N.E.2d 1287 (8th Dist.1983).

{¶ 13} Because Slater pleaded guilty, he waived his statutory speedy-trial rights and cannot assert a violation of them on appeal.

## 2. Constitutional Right to a Speedy Trial

{¶ 14} Although a defendant generally waives his *statutory* right to a speedy trial by pleading guilty, our court has held that a defendant does not waive his *constitutional* right to a speedy trial by doing so. *See State v. Forrest*, 8th Dist. Cuyahoga No. 109230, 2021-Ohio-122, ¶ 10 (collecting cases and citing *Branch* at 162).[2] A defendant's constitutional speedy-trial rights under the United States and Ohio Constitutions are "essentially equivalent." *See State v. Winn*, 8th Dist. Cuyahoga No. 98172, 2012-Ohio-5888, ¶ 24, citing *State v. Butler*, 19 Ohio St.2d 55, 57, 249 N.E.2d 818 (1969).

{¶ 15} Our review of an alleged constitutional speedy-trial violation presents a mixed question of law and fact. *State v. Long*, 163 Ohio St.3d 179, 2020-Ohio-5363, 168 N.E.3d 1163, ¶ 15; *see also, e.g.*, *State v. Miller*, 8th Dist. Cuyahoga No.

---

[2] The state did not brief any argument that Slater waived his constitutional speedy-trial rights by pleading guilty. We continue to acknowledge, as our court did in *Forrest*, that there is a split among Ohio appellate districts that have considered whether a defendant waives the constitutional right, as opposed to the statutory right, by pleading guilty. *See Forrest* at ¶ 10, fn. 2. In fact, our district may be an outlier in that we consistently analyze constitutional speedy-trial arguments where a defendant has pleaded guilty. *See, e.g.*, *State v. Robinson*, 8th Dist. Cuyahoga No. 110467, 2022-Ohio-1311, ¶ 61; *State v. Cooke*, 8th Dist. Cuyahoga No. 108824, 2020-Ohio-2725, ¶ 40; *compare State v. Watson*, 2018-Ohio-4971, 126 N.E.3d 289, ¶ 7 (1st Dist.); *State v. Bowman*, 3d Dist. Crawford No. 3-89-18, 1990 Ohio App. LEXIS 5733, 17 (Dec. 21, 1990); *State v. Dickens*, 4th Dist. Meigs No. 05CA14, 2006-Ohio-4920, ¶ 6; *State v. Phelps*, 5th Dist. Fairfield No. 21CA12, 2022-Ohio-3025, ¶ 33, 35–36; *State v. Glanton*, 6th Dist. Wood No. WD-18-091, 2020-Ohio-834, ¶ 26; *State v. Smith*, 7th Dist. Columbiana No. 07 CO 10, 2007-Ohio-6913, ¶ 9–10; *but see State v. Williams*, 9th Dist. Medina No. 2273-M, 1994 Ohio App. LEXIS 1738, 4–5 (Apr. 20, 1994) (agreeing that a defendant does not waive their constitutional speedy-trial rights by pleading guilty); *see also State v. Mize*, 2022-Ohio-3163, 195 N.E.3d 574, ¶ 46–50 (2d Dist.) (acknowledging that the Second District has taken "competing approaches" on the issue), citing *State v. Johnson*, 2d Dist. Greene No. 2013-CA-1, 2013-Ohio-4077.

109130, 2021-Ohio-2924, ¶ 45, citing *State v. Barnes*, 8th Dist. Cuyahoga No. 90847, 2008-Ohio-5472, ¶ 19. We defer to the trial court's factual findings if they are supported by competent, credible evidence but we review the application of the law to those facts de novo. *Long* at ¶ 15. Here, there were no factual findings because Slater never asserted his speedy-trial rights for consideration by the trial court.

{¶ 16} "'In examining a constitutional claim on speedy trial grounds, the statutory time requirements of R.C. 2945.71 to 2945.73 are not relevant; instead, courts should employ the balancing test enunciated by the United States Supreme Court[.]'" *Miller* at ¶ 45, quoting *State v. Cochern*, 8th Dist. Cuyahoga No. 104960, 2018-Ohio-265, ¶ 47; *see Barker v. Wingo*, 407 U.S. 514, 530, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972). The U.S. Supreme Court identified the balancing test factors as: (1) the length of the delay; (2) the reason for the delay; (3) the defendant's assertion of their right and (4) prejudice to the defendant as a result of the delay. *See Barker* at 531–532.

### a. Length of the Delay

{¶ 17} Slater was arrested on June 30, 2020 and pleaded guilty on March 4, 2022. After considering the nature of the charges, we find the delay in this matter — approximately 20 months — to be presumptively prejudicial. *See Long* at ¶ 14 ("Generally, a delay that approaches one year is presumptively prejudicial."), citing *Doggett v. United States*, 505 U.S. 647, 652, 112 S.Ct. 2686, 120 L.Ed.2d 520 (1992), fn.1 ("Depending on the nature of the charges, the lower courts have

generally found postaccusation delay 'presumptively prejudicial' at least as it approaches one year."). Therefore, the first *Barker* factor weighs in Slater's favor and we continue with an analysis of the remaining factors. *See Adams*, 144 Ohio St.3d 429, 2015-Ohio-3954, 45 N.E.3d 127, at ¶ 89 ("[L]ength of delay serves as a triggering mechanism for the rest of the *Barker* analysis.").

### b. Reason for the Delay

{¶ 18} The second factor strongly favors the state, since the vast majority of the delay in this case was attributable to Slater.

### i. June 30 – October 14, 2020

{¶ 19} Slater was arrested on June 30, 2020 and remained in jail until he was released on bond on July 3, 2020. The parties agree that these days are attributable to the state.

{¶ 20} The Grand Jury indicted Slater on September 29, 2020 and a summons was issued for an arraignment to be held on October 14, 2020. The parties agree that the time between Slater's release on bond and the date of the arraignment is also attributable to the state.[3] Thus, the entire three-and-a-half-month period of June 30 to October 14, 2020, is attributed to the state.

---

[3] *See also, e.g.*, *State v. Tuttle*, 8th Dist. Cuyahoga No. 110508, 2022-Ohio-303, ¶ 12 ("When the subsequent charges arise out of the initial arrest and are not based on any new facts discovered by the state, the date of the original arrest commences the speedy trial clock."), citing *State v. Parker*, 113 Ohio St.3d 207, 2007-Ohio-1534, 863 N.E.2d 1032, ¶ 18.

### ii. October 15, 2020 – January 29, 2021

{¶ 21} Slater failed to appear at the arraignment on October 14 and a capias was issued for his arrest. Slater was taken back into custody on January 29, 2021. The parties agree that this three-and-a-half-month period is attributable to Slater. *E.g.*, *Cochern*, 8th Dist. Cuyahoga No. 104960, 2018-Ohio-265, at ¶ 50, 55.

### iii. January 30 – February 9, 2021

{¶ 22} After Slater's rearrest, he was arraigned on February 2, 2021 and was released on bond on February 4, 2021. The parties agree that the six days Slater spent in jail between his rearrest and arraignment are attributable to the state.

{¶ 23} The trial court held a telephonic pretrial hearing on February 9, 2021. The five days between Slater's release on bond and this pretrial are also attributed to the state.

### iv. February 10 – June 16, 2021

{¶ 24} After the pretrial, the court journalized an order continuing the pretrial "at the request of Defendant" "for ongoing discovery." The court's order also stated that a continuance of the trial was necessary "for the administration of justice" due to the challenges posed by the COVID-19 pandemic and pursuant to the common pleas court's November 18, 2020 administrative order regarding the conduct of jury trials.

{¶ 25} The trial court held another pretrial conference on March 1, 2021, continuing the case without setting a new trial date for the same reasons — ongoing discovery at Slater's request and because of COVID-19.

{¶ 26} Another pretrial conference was held on March 31, 2021. The court set a trial date of June 30, 2021 and noted that the continuance of the trial was for the same two reasons — for ongoing discovery at Slater's request and because of COVID-19.

{¶ 27} The trial court held pretrial hearings on April 22, May 5 and May 25, 2021. Each time, the trial court reiterated that the trial remained set for June 30, 2021 and noted that Slater requested the time "for ongoing discovery."[4]

{¶ 28} The parties disagree about the allocation of the four months and one week that passed between the February 9, 2021 pretrial and the June 16, 2021 pretrial (discussed further below). Slater says the time should be attributed to the state because the administrative orders issued by the common pleas court regarding COVID-19 were unconstitutional and because they do not apply to him. The state counters that the orders were valid and suspended jury trials until April 26, 2021 and that Slater requested all these continuances to review discovery.

{¶ 29} We agree with the state and we need not address Slater's arguments directed at the COVID-19 administrative orders because Slater requested these continuances. Slater points to nothing in the record that contradicts the trial court's statements in its journal entries that the defense requested these continuances to exchange and review discovery. *See Tuttle*, 8th Dist. Cuyahoga No. 110508, 2022-Ohio-303, at ¶ 38 ("[C]ontinuances at the defendant's request are tolling events.

---

[4] The April 22, 2021 pretrial was also continued due to the COVID-19 pandemic.

* * * Without any evidence or indication from the record that the state was hindering [the defendant's] discovery requests or preparation, or that the continuances were in fact not at [the defendant's] request, this time period is tolled for speedy trial purposes."). It is not unreasonable to expect that the defense would request just over four months to complete discovery and prepare for trial in this matter.

### v. June 17 – October 30, 2021

{¶ 30} If trial had commenced on June 30, 2021, as scheduled, Slater would have faced trial approximately five months after his arraignment. Instead, the trial court was forced to continue the trial date because Slater failed to appear at a pretrial hearing on June 16, 2021, two weeks before trial. A capias was issued and Slater was taken back into custody on October 30, 2021. The parties agree that this period of time, approximately four and a half months, is attributable to Slater.

### vi. October 31 – November 4, 2021

{¶ 31} After Slater's third arrest, the trial court set a pretrial conference for November 4, 2021. The trial court indicated that this was a continuance "at the request of Defendant" "for ongoing discovery," but there is no indication on the docket that Slater or his counsel was in court to make such a request or otherwise made the request. Even attributing the five days Slater spent in jail before this pretrial to the state, we would not find a speedy-trial violation.

### vii. November 5, 2021 – March 2, 2022

{¶ 32} The trial court held a pretrial hearing on November 4, 2021. The court continued the pretrial without setting a trial date "at the request of Defendant"

because the "attorney for Defendant has entered into plea negotiations on this case with the state." The trial court held pretrial hearings on November 22, November 30 and December 14, 2021, each time continuing the matter for another pretrial without setting a trial date. Each continuance was noted to have been made at Slater's request to allow for plea negotiations or to receive and review discovery.[5]

{¶ 33} Slater filed his motion to disqualify his counsel on December 21, 2021.

{¶ 34} The trial court held another pretrial hearing on January 3, 2022. The court again continued the pretrial "at the request of defendant" "for ongoing discovery and hearing on Defendant's request to disqualify counsel." The court also noted that Slater was in medical isolation in the county jail.

{¶ 35} The trial court held a pretrial hearing on January 11, 2022, during which it addressed Slater's motion to disqualify. After this hearing, the court set a trial date of March 8, 2022.

{¶ 36} The trial court held a pretrial hearing on February 24, 2022. The court continued the pretrial "at the request of Defendant" "for ongoing plea negotiations."

---

[5] The continuances granted on November 4, November 22 and November 30, 2021 were attributed to plea negotiations. The continuance granted on December 14, 2021 was attributed to ongoing discovery.

{¶ 37} The entire period of time from November 5, 2021 to March 2, 2022 is attributable to continuances granted at Slater's request for discovery and plea negotiations and to address his pro se motion to disqualify his counsel.

### viii. March 3–4, 2022

{¶ 38} The trial court held another pretrial hearing on March 2, 2022. The court continued the pretrial "at the request of Defendant" because "Defendant's attorney and Defendant discussed plea negotiations" and "Defendant does not want to take the plea." The court noted that the trial remains set for March 8, 2022. Therefore, we attribute the two days between this pretrial and the March 4 hearing to the state.

{¶ 39} On March 4, 2022, Slater pleaded guilty.

### ix. Weighing This Factor

{¶ 40} Approximately 20 months passed between Slater's initial arrest and his entry of a guilty plea.

{¶ 41} At most, the state is responsible for a little over four months of that delay — (1) June 30 to October 14, 2020 (3.5 months); (2) January 30 to February 9, 2021 (11 days); (3) October 31 to November 4, 2021 (5 days) and (4) March 2 to March 4, 2022 (2 days). For most of the time chargeable to the state, Slater was not in pretrial detention. Moreover, Slater does not allege that any of the delay chargeable to the state was due to "[d]eliberate attempts to hamper the defense." *See Barker*, 407 U.S. at 531, 530, 92 S.Ct. 2182, 33 L.Ed.2d 101. Indeed, he does not even argue that the state was negligent. *See id.*

{¶ 42} On the other hand, Slater is responsible for approximately eight months of delay by virtue of his failures to appear. His first failure to appear delayed his arraignment by three and a half months and his second failure to appear occurred two weeks prior to a scheduled trial and required the continuance of the trial. During all of this time on capias, Slater was not in pretrial detention.

{¶ 43} More than six months were attributed to continuances made at Slater's request for ongoing discovery. As stated above, there is nothing in the record to suggest that the state was hindering discovery or — with the exception noted above at paragraph 31, which we have charged to the state — that Slater did not make these requests. We also note that the timing of the requests supports a conclusion that Slater's own failure to appear contributed to these delays. A little over four months of discovery-related delay occurred between Slater's arraignment in February 2021 and the scheduled trial on June 30, 2021, during which it is reasonable to expect that the defense was obtaining and reviewing the discovery and preparing for trial. Slater then failed to appear and he was not rearrested for over four months. The defense requested a little less than three months for discovery-related purposes after Slater's rearrest. In the absence of any evidence in the record to suggest otherwise, we do not find this to be an unreasonable amount of time necessary for the defense to refresh itself on the evidence and prepare for the new trial scheduled for June 30, 2022. In particular, we note that the prosecutor stated on the record that defense counsel had been "back and forth" with the state about

the legality of the hospital's blood draw. Around two months of delay were attributed to continuances made at Slater's request for plea negotiations.

{¶ 44} At the January 11, 2022 hearing, Slater's defense counsel related that COVID-19 had made it difficult to meet with Slater while he was detained in jail. The trial court also recognized at the hearing that the difficulty lawyers had encountered trying to visit with their clients at the county jail "is a problem that is ongoing with our jail and COVID." The trial court continued as follows:

> [T]he jail situation for visitation during COVID is difficult, and it's that way across the United States. I'm sure it's that way in Germany and South Africa and anywhere else. I mean, there's infection that is rampant.

{¶ 45} Finally, a little over a week of delay was attributed to the trial court's need to set a hearing for consideration of Slater's motion to disqualify his counsel.

{¶ 46} Slater does not argue that the defense did not need the continuances it requested for discovery and plea negotiations. He does not complain that the state was dragging its feet, so to speak, or intentionally hampering his defense. Slater primarily takes issue with the delays occasioned by the trial court's administrative orders related to the COVID-19 pandemic. But, as discussed above, the delays attributed to COVID-19 amounted to only about three months and occurred immediately following Slater's first rearrest and arraignment; the delays overlapped with continuances that the defense requested to receive and review discovery. Slater failed to appear and remained on capias for months after these COVID-related continuances were ordered. Nothing in the record suggests that these orders added

any delay to the case and at no point did the defense object to the trial court's scheduling of the case.

{¶ 47} After a thorough consideration of the reasons for the delay in this matter, we find that Slater is responsible for the vast majority of the delay. The second *Barker* factor strongly weighs in favor of the state.

### c. Slater's Non-Assertion of His Right

{¶ 48} Slater never moved for dismissal or asserted his right to a speedy trial, facts that weigh strongly against him. *See Doggett*, 505 U.S. at 651, 112 S.Ct. 2686, 120 L.Ed.2d 520 (assertion of speedy trial must be in due course and timely); *Barker*, 407 U.S. at 532, 530, 92 S.Ct. 2182, 33 L.Ed.2d 101 ("We emphasize that failure to assert the right will make it difficult for a defendant to prove that he was denied a speedy trial."); *Taylor*, 98 Ohio St.3d 27, 2002-Ohio-7017, 781 N.E.2d 72, at ¶ 37 ("[The defendant's] failure to file a motion to dismiss on speedy trial grounds prior to trial and pursuant to R.C. 2945.73(B) prevents him from raising the issue on appeal."), citing *State v. Thompson*, 97 Ohio App.3d 183, 186–187, 646 N.E.2d 499 (6th Dist.1994); *cf. Crider v. Maxwell*, 174 Ohio St. 190, 192, 187 N.E.2d 875 (1963) (stating, while reviewing a petition for release by habeus corpus, that "[a]lthough the right to a speedy trial is provided by the Constitution for all persons accused of crimes, such right must be urged, and the failure to so urge it will constitute a waiver thereof.").

### d. Prejudice to Slater

{¶ 49} We consider the fourth factor — prejudice — "'in the light of the interests of defendants[,] which the speedy trial right was designed to protect.'" *Long*, 163 Ohio St.3d 179, 2020-Ohio-5363, 168 N.E.3d 1163, at ¶ 22, quoting *Barker* at 532. These interests are: "(i) to prevent oppressive pretrial incarceration; (ii) to minimize anxiety and concern of the accused; and (iii) to limit the possibility that the defense will be impaired." *Id.* The third interest is the greatest concern because it "'skews the fairness of the entire system.'" *Id.*

{¶ 50} Slater does not argue that his pretrial incarceration was oppressive to him or that the delay in this case increased his anxiety or concern. Slater was released on bond twice in this case and so, with the exception of the three days after his arrest and pending an arraignment, each instance of his pretrial incarceration was pursuant to a capias issued because he failed to appear as required and the revocation of his bond. Slater also makes no argument that the delay impaired his ability to prepare a defense. He has not claimed, for example, that his ability to gather evidence or contact witnesses was hindered. *See Barker* at 533.

{¶ 51} While a defendant need not point to "affirmative proof of particularized prejudice" in every case — *Doggett* at 655 — we see no reason why this factor should weigh in Slater's favor here. As discussed above, the vast majority of the delay in this case was attributable to Slater. "[I]f delay is attributable to the defendant, then his waiver may be given effect under standard waiver doctrine." *Barker* at 529. In other words, "under the prejudice inquiry, we look at the portion

of the delay that is attributable to the government." *Long* at ¶ 70 (DeWine, J., dissenting), citing *Barker* at 533–534. In the absence of any alleged actual prejudice, we do not find the four-month delay attributable to the state here to have prejudiced Slater.

### e. Balancing the *Barker* factors

{¶ 52} Balancing the *Barker* factors, we find no violation of Slater's constitutional speedy-trial rights. The only factor that weighs in his favor is the length of the delay. The length of the delay is not excessive enough to outweigh Slater's failure to assert his rights, especially where the delay was mostly attributable to Slater and no particular prejudice to the defense was shown.

{¶ 53} Because Slater waived his statutory speedy-trial right and there was no violation of his constitutional speedy-trial right, we overrule Slater's first assignment of error.

### B. Second Assignment of Error – Ineffective Assistance of Counsel

{¶ 54} Slater contends that his trial counsel was ineffective because counsel did not move for dismissal of the indictment based on a speedy-trial violation and because counsel did not file a motion to suppress the results of the blood draw taken at the hospital after the car accident. We find no merit to the argument.

{¶ 55} A claim of ineffective assistance of counsel is generally waived by a guilty plea, except to the extent that the ineffective assistance of counsel caused the defendant's plea to be less than knowing and voluntary. *State v. Williams*, 8th Dist. Cuyahoga No. 100459, 2014-Ohio-3415, ¶ 11, citing *State v. Spates*, 64 Ohio St.3d

269, 272, 595 N.E.2d 351 (1991), citing *Tollett v. Henderson*, 411 U.S. 258, 267, 93 S.Ct. 1602, 36 L.Ed.2d 235 (1973). As our court has previously said:

> "A failure by counsel to provide advice [which impairs the knowing and voluntary nature of the plea] may form the basis of a claim of ineffective assistance of counsel, but absent such a claim it cannot serve as the predicate for setting aside a valid plea." Accordingly, a guilty plea waives the right to claim that the accused was prejudiced by constitutionally ineffective counsel, except to the extent the defects complained of caused the plea to be less than knowing and voluntary.

(Citation omitted.) *Milczewski*, 8th Dist. Cuyahoga No. 97138, 2012-Ohio-1743, at ¶ 5, quoting *United States v. Broce*, 488 U.S. 563, 574, 109 S.Ct. 757, 102 L.Ed.2d 927 (1989).

{¶ 56} Slater never moved to withdraw his guilty plea. He does not claim on appeal that his plea was less than knowing or voluntary and he asserts no complaints about his counsel's advice with respect to the plea. In short, he has not put forth any valid basis for us to reverse his convictions. Even if he had framed his argument around the validity of his plea, the argument would be meritless.

{¶ 57} Slater waived the argument that his counsel was ineffective for not filing a motion to dismiss based on statutory-speedy-trial issues. *E.g.*, *Forrest*, 8th Dist. Cuyahoga No. 109230, 2021-Ohio-122, at ¶ 9. A motion to dismiss on constitutional-speedy-trial issues would have been meritless because there was no constitutional-speedy-trial violation for the reasons stated above. *See Forrest* at ¶ 26. With respect to Slater's claim that his counsel was ineffective for not filing a motion to suppress the blood-draw evidence, Slater merely argues that defense counsel had discussed the legality of the blood draw with Slater and did not file a

motion to suppress; he does not address the merits of any particular theory of suppression. "Failing to file a motion to suppress does not constitute ineffective assistance of counsel per se." *State v. Brown*, 115 Ohio St.3d 55, 2007-Ohio-4837, 873 N.E.2d 858, ¶ 65. Even if Slater had not pleaded guilty, he would have to "prove that there was a basis to suppress the evidence in question," among other things, to prevail on an ineffective-assistance claim based on a failure to file a motion to suppress. *Id*. He puts forth no argument on appeal with respect to the merits of any particular theory of suppression and, for this additional reason, we consider his argument no further.

{¶ 58} Because Slater waived all ineffective-assistance-of-counsel arguments except those that would affect the validity of his plea, because he raised no arguments regarding the validity of his plea and because his substantive arguments are meritless anyway, we overrule Slater's second assignment of error.

## III. Conclusion

{¶ 59} Having overruled Slater's assignments of error for the reasons stated above, we affirm his convictions.

It is ordered that the appellee recover from the appellant the costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the Cuyahoga County Court of Common Pleas to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27

of the Rules of Appellate Procedure.

_____
EILEEN A. GALLAGHER, PRESIDING JUDGE

MARY EILEEN KILBANE, J., and
EILEEN T. GALLAGHER, J., CONCUR